669 So.2d 1044 (1996)
Cynthia L. RUSSENBERGER, Petitioner,
v.
Ray Dean RUSSENBERGER, Respondent.
No. 85743.
Supreme Court of Florida.
March 14, 1996.
*1045 E. Jane Brehany of Myrick, Davis & Brehany, Pensacola, for Petitioner.
Crystal Collins Spencer of Emmanuel, Sheppard & Condon, Pensacola, for Respondent.
ANSTEAD, Justice.
We have for review Russenberger v. Russenberger, 654 So.2d 207 (Fla. 1st DCA 1995), based on conflict with Tremblay v. Tremblay, 638 So.2d 1057 (Fla. 4th DCA 1994), and Mize v. Mize, 621 So.2d 417 (Fla.1993). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. Although we find that these decisions can be harmonized, we accept jurisdiction in order to clarify our decision in Mize.[1] We approve the decision under review,[2] and we approve of the opinion in Tremblay.
In Mize v. Mize, 621 So.2d 417 (Fla.1993), we attempted to resolve an ongoing conflict in the district courts as to the standard to be applied by a trial court when a custodial parent requests to relocate with the minor children. Prior to Mize, the district courts of appeal appeared to approach the issue in three different ways. The Fifth District adopted a policy strictly disfavoring relocation. See Mize v. Mize, 589 So.2d 959 (Fla. 5th DCA 1991), quashed, 621 So.2d 417 (Fla. 1993); Mast v. Reed, 578 So.2d 304 (Fla. 5th DCA 1991); Cole v. Cole, 530 So.2d 467 (Fla. 5th DCA 1988); Jones v. Vrba, 513 So.2d 1080 (Fla. 5th DCA 1987); Giachetti v. Giachetti, 416 So.2d 27 (Fla. 5th DCA 1982). On the other hand, the Third District adopted a policy favoring relocation. See Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), review denied, 560 So.2d 233 (Fla.1990); Matilla v. Matilla, 474 So.2d 306 (Fla. 3d DCA 1985). Finally, somewhere in the middle of these two approaches was the tack taken by the Fourth District which adopted certain considerations to guide the discretion of the trial judge. See DeCamp v. Hein, 541 So.2d 708 (Fla. 4th DCA), review denied, 551 So.2d 461 (Fla.1989).
We resolved this conflict in Mize by adopting the Third District's approach in Hill, including Judge Schwartz's special concurrence.[3] In Mize, we acknowledged that we were attempting to balance important but somewhat competing policy concerns. We recognized that Florida has a strong policy of maintaining a close and continuing relationship between minor children and their divorced parents. 621 So.2d at 419.[4] However, *1046 in Mize our basic intent was to adopt a policy allowing a good faith relocation by a custodial parent, although stopping short of adopting a per se rule. Hence, we approved of both the district court majority opinion in Hill and the concurring opinion of Chief Judge Schwartz.[5] In doing so, quoting from Judge Schwartz, we held:
[S]o long as the parent who has been granted the primary custody of the child desires to move for a well-intentioned reason and founded belief that the relocation is best for that parent'sand, it follows, the child'swell-being, rather than from a vindictive desire to interfere with the visitation rights of the other parent, the change in residence should ordinarily be approved.
[Hill,] 548 So.2d at 707-08 (Schwartz, J., specially concurring) (footnotes omitted).
Id. at 419-20. We also explicitly recognized in Mize that circumstances may exist that would justify a departure from the general rule favoring relocation:
Judge Schwartz recognized that circumstances may exist that would justify a departure from the general rule. 548 So.2d at 708 n. 3. For example, when older children are involved, the trauma of leaving friends, other family members, and school may outweigh the trauma in separating from the primary residential parent.
Id. at 420. Hence, we adopted a general rule favoring relocation, while at the same time recognizing that exceptions must be allowed. We directed that the criteria under the general rule as well as the guidelines set out in the Hill majority be utilized by the trial court to determine whether the general rule or the exception should be applied under the circumstances of a particular case. Id.
We reaffirm the policy adopted in Hill and reiterate here the general rule adopted therein that a request for relocation should be favored as long as the request is made in good faith under the criteria described by Judge Schwartz that were quoted with approval in Mize.[6] In other words, relocation should ordinarily be approved so long as the custodial parent desires to move for a well-intentioned reason and a founded belief that relocation is best for the well-being of that parent and the children, rather than from a vindictive desire to interfere with the visitation rights of the other parent. Mize, 621 So.2d at 419.[7]
*1047 We find no conflict between our holding in Mize and the Fourth District's decision in Tremblay v. Tremblay, 638 So.2d 1057 (Fla. 4th DCA 1994). Indeed, Judge Klein's opinion in Tremblay expressly sets out the six Hill factors approved in Mize. Further, after discussing the Mize decision, the Tremblay opinion correctly observes:
The adoption in Mize of the six factors to be considered in these cases did not significantly change the law in this district, since this court had previously utilized them. The adoption in Mize of what Judge Schwartz stated in his concurring opinion in Hill, however, does represent a significant change. It means that where the relocating parent is acting in good faith, permission to relocate should generally be granted; i.e., granting relocation becomes the proverbial rule, rather than the exception.
Id. at 1059 (citations omitted). This statement is an accurate interpretation of our holding in Mize.
We also agree with the district court in Russenberger that there is competent substantial evidence in the record to support the trial court's conclusion that this case fits within the exception to the general rule of Mize. See Russenberger, 654 So.2d at 217. The record contains conflicting evidence as to Mrs. Russenberger's good faith in relocating, as well as to the impact of the move upon the children and their continuing relationship with their father. For example, there was enough doubt as to Mrs. Russenberger's motivation for the move, her compliance with substitute visitation arrangements, and the adequacy of substitute visitation, to uphold the trial court's decision denying relocation. Further, we are influenced, as was the district court, by the fact that the trial judge has been involved with these parties and children for some time, has presided over several evidentiary hearings in this case, and, thus, is quite familiar with the competing facts and claims. See id.
In conclusion, we hold that upon a demonstration of good faith as described in Mize of a custodial parent seeking to relocate, that parent is entitled to a presumption in favor of his request to relocate with the minor children. However, that presumption is rebuttable, and in considering such a request and any opposition to it, the trial court should weigh the Hill factors on a case-by-case basis. We approve the decision of the district court holding that the trial court did not abuse its discretion by denying Mrs. Russenberger's request to relocate.
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and WELLS, JJ., concur.
NOTES
[1] In Russenberger, the opinion noted "We recognize that our reading of Mize may conflict with the reading given Mize by our colleagues of the Fourth District. See Tremblay v. Tremblay, supra." 654 So.2d at 214 n. 8.
[2] We compliment Judge Van Nortwick on his scholarly and well-written district court opinion.
[3] In Hill, the Third District reversed a trial court order denying a custodial parent's request to relocate and set out certain guidelines for determining the issue. 548 So.2d at 707. The special concurrence agreed with this approach and advocated a policy generally favoring relocation. Id. at 707-08.
[4] As noted by Chief Justice Barkett in her concurring opinion in Mize, our decision was not easily made because:

The public policy articulated by the statute [favoring a close relationship between parents and children] without question represents the ideal arrangement. However, in today's increasingly mobile society, parents are going to have legitimate needs to relocate. As one commentator has noted:
The cooperative custody system is based on the social value of the child's continuing relationship with both parents after divorce. Its premise is that a child is more likely to benefit if the state encourages divorced parents to work together in a parental capacity than if the state delegates control of the child to one of them.
This fundamental belief, however, must contend with the realities of life in a mobile society that values personal and parental autonomy.
Andrew Schepard, Taking Children Seriously: Promoting Cooperative Custody After Divorce, 64 Tex.L.Rev. 687, 780 (1985).
621 So.2d at 421.
[5] We note that Judge Schwartz's concurrence was in complete agreement with the Hill majority opinion and decision.
[6] This policy appears to be consistent with the trend in other jurisdictions. As one author has observed:

[A]n increasing number of states have begun to shift the burden from the custodial parent to the noncustodial parent to create a presumption in favor of removal. In order to accomplish this preference, some courts have chosen to continue to require some minimal showing of good faith by the custodial parent before the burden of proof is shifted to the noncustodial parent. Other states have more expressly created a presumption in favor of removal by initially placing the burden on the noncustodial parent. Finally, one state has rejected any judicial authority to limit a custodial parent's choice of residence. Thus, there appears to be a trend favoring relocation in the majority of jurisdictions addressing this issue.
James Grayson, International Relocation, the Right to Travel, and the Hague Convention: Additional Requirements for Custodial Parents, 28 Fam.L.Q. 531, 534 (1994) (footnotes omitted) (emphasis added).
[7] As articulated by Judge Schwartz in his concurrence in Hill, this policy is simply an adjunct to the earlier trial court determination finding that it was in the child's best interest to be with the custodial parent:

This rule inevitably flows, I believe, from a consideration of what all acknowledge is the touchstone of the issue: the best interests of the child. Inasmuch as it is a priori the case that those interests have already resulted in an award of custody to a particular parent, either by agreement or court order, it follows that the child should live wherever that residence may be rather than in what is by definition the less important location of the other parent. To favor, in other words, the home preferred by the visitor over that of the custodianas was the case in such, I think, wholly misguided decisions as Parker v. Parker, 519 So.2d 673 (Fla. 1st DCA 1988), review dismissed, 531 So.2d 1354 (Fla.1988); Costa v. Costa, 429 So.2d 1249 (Fla. 4th DCA 1983); and Giachetti v. Giachetti, 416 So.2d 27 (Fla. 5th DCA 1982)represents a clear failure of legal logic, if nothing more. The latter result is particularly unjustified when, as here, the visitorwho so far has almost always been the fatheris financially able either to exercise his visitation rights at the mother's home, to transport the child from that home to his own, or both. Indeed, since the child's welfare is the only concern, it would make as much or more sense to require the father to move entirely to the mother's chosen home so as to exercise his access to the children, as the reverse requirement that the mother remain where she does not wish to live in order to accommodate the father.
Hill v. Hill, 548 So.2d 705, 708 (Fla. 3d DCA 1989) (footnote omitted).