683 So.2d 647 (1996)
Daniel D. WILLEY, Appellant,
v.
Cindy D. WILLEY, Appellee.
No. 95-0671.
District Court of Appeal of Florida, Fourth District.
December 4, 1996.
*648 Carolyn Frank of Frank & Frank, Delray Beach, for appellant.
L. Rachel Eisenstein and Holly Davidson of DuBosar & Davidson, P.A., Boca Raton, for appellee.
PARIENTE, Judge.
Appellant, Daniel D. Willey (the father), appeals a final order modifying visitation incident to the relocation from Florida to Chicago of appellee, Cindy D. Willey (the mother). We reverse because the trial court abused its discretion in substantially reducing the visitation afforded the father without any findings or evidence that such reduced visitation was in the best interests of the minor child and in requiring the father to bear the overwhelming proportion of the transportation expenses.
By separate judgment, the trial court granted the mother's petition to move out of state with the parties' two children. Although the father does not challenge the trial court's decision allowing the mother and the children to move out of state, he strongly protests the significant reduction in the amount of visitation with the minor child[1] as well as the financial burden imposed on the exercise of his right to visitation by requiring him to pay all of the travel expenses.
At the time of the divorce in October 1993, the trial court ordered shared parental responsibility of the parties' children. The trial court designated the mother as the primary custodial parent, but granted the father "reasonable" visitation rights.
Reasonable visitation as set forth in the trial court's standard visitation order, unless the parties otherwise agreed, included every other weekend, every Wednesday evening, *649 the entire spring vacation, and a portion of Thanksgiving and winter vacations. The amount of summer visitation depended on the child's age. The father was granted at least 30 consecutive days of summer visitation until the child reached school-age, at which time summer visitation was to increase to eight weeks unless the child was required to attend summer school.
The standard visitation order did not quantify the days of visitation. According to the father's calculation, which the mother does not dispute, this schedule granted him 154 days (5 months and 4 days) of visitation per year before the child was old enough to be enrolled in school and 175 days (6 months and 4 days) after the child reached schoolage. The weekly Wednesday evening visits and bi-weekly weekend visits together accounted for 78 of the 154 days.
In March 1994, the mother petitioned the trial court for a modification of the final judgment so that she could move with her children to Chicago. As justification for the planned relocation, the mother asserted that most of her family lived in Chicago and that she had better employment opportunities there. The father testified to the relationship he enjoyed with his daughter and how the move would severely impact his visitation rights and adversely affect his relationship with the minor child.
In granting relocation, the trial court specifically stated that it was considering the impact of the relocation on the father's opportunity for visitation. It found that "the cost of transportation could be affordable and substitute visitation, with the Father, can be achieved and would be adequate to foster the relationship the children have with the Father."
The trial court reserved jurisdiction to enter a detailed visitation schedule. In accordance with the trial court's request, both parties submitted proposed visitation schedules with the minor child.
The mother proposed a visitation schedule providing for generous summer visitation consisting of alternating two weeks with the father and one week with the mother, with the expenses to be shared by the parties. She also proposed that the minor child spend spring break, Christmas break (except Christmas Eve and Christmas), and alternating Thanksgiving holidays with her father. The mother agreed that the father may also visit the minor child any weekend or holidayat his own expensein Chicago, where he was "welcome to stay with them in the home of the Former Wife." As to all visitation time except summer vacation, the mother proposed that the father bear the transportation expenses.
The father's proposed visitation schedule included one week for each holiday (Christmas, Thanksgiving, Easter and Washington's Birthday), 60 days summer vacation, and one weekend per month in Chicago. As support, he cited to Sherman v. Sherman, 558 So.2d 149 (Fla. 3d DCA 1990), where the court found a similar substitute schedule to be meaningful. He further proposed, based on the mother's new financial circumstances after relocation, that she bear 75% of the travel expenses.
The trial court did not hold any further hearings or receive any evidence on whether either of the parties' proposed schedules or a combination of the two would prove workable and be in the best interests of the minor child. Instead, the trial court entered an "Order on Visitation Schedule" in January 1995, granting the father significantly reduced visitation in Florida: 30 days during summer vacation, alternating Thanksgiving holidays, and one week during the winter holidays when school is not in operation.[2]
At the time the trial court entered the order, the minor child would have been almost five years old and approaching schoolage; yet no part of the trial court's order recognized any increased summer visitation once the minor child reached school-age, as did the prior visitation order. The trial court further required the father to pay all travel *650 expenses associated with visitation and mandated that the father fly to Chicago to pick up the minor child in order to return with her to Florida.
This case requires us to confront two policies. First is the strong policy of shared parental responsibility as articulated by the "[l]egislature's determination that the best interests of children are served by frequent and continuing contact with both parents." Mize v. Mize, 621 So.2d 417, 420 (Fla.1993) (Barkett, J., concurring); see § 61.13(2)(b), Fla.Stat. (1995). Second is the policy allowing relocation. In our increasingly mobile society, a parent may have a legitimate desire to relocate, which a court should be loathe to prevent.[3]Mize, 621 So.2d at 421. The role of the courts should "not be to impose restrictions on one parent's ability to move, but to urge the parents to seek a mutually acceptable solution for the best interests of their children." Id.
As our supreme court made clear in Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996), a parent is presumptively entitled to relocation upon a demonstration of good faith as described in Mize. The presumption is rebuttable, and in considering the request and any opposition to it, the trial court should weigh the Hill[4] factors on a case-by-case basis. Russenberger, 669 So.2d at 1046; Mize, 621 So.2d at 420. Two of the six Hill factors particularly pertinent here are: 1) whether substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent; and 2) whether the cost of transportation is financially affordable by one or both parents. See Mize, 621 So.2d at 420. Because these factors should be considered in a relocation decision, it follows that once a trial court has granted the relocation request, the substitute visitation must be adequate to foster a continuing meaningful relationship and financially affordable.
In determining what constitutes meaningful substitute visitation, the trial court has broad discretion to fashion a visitation order that serves the best interests of the child, while taking into account the realities of each individual case, the age of the child, and the parties' financial circumstances.
Because courts must liberally grant relocation and at the same time honor the legislative policy of shared parental responsibility, the trial court should endeavor to maximize the opportunity for contact between the noncustodial parent and the relocated child to the degree practicable under the circumstances. Working with the parties and the unique facts of each case, the court should attempt to set a schedule that will ensure the noncustodial parent's opportunity to enjoy meaningful visitation with the child without too disruptive an effect on the child. In doing so, the trial court may consider whether the noncustodial parent has taken advantage of the previous visitation schedule.
Whether an abuse of discretion occurs in any given case is not simply a numbers game, because it is so often the quality of the time and not the quantity which is significant to a relationship. We thus decline to adopt a bright-line test. Nevertheless, the numbers are telling hereboth in amount of time and expense.
Here, the trial court ordered less visitation than even the mother had suggested, and offered no reasons for the drastically-reduced visitation schedule. The mother's proposed schedule was more generous than that ordered by the trial court with respect to both spring break and summer visitation.
The trial court granted the father no visitation with the minor child from Christmas until summer even though the mother had proposed that the minor child spend spring *651 break with the father. The trial court granted only 30 days in the summer even though the wife's proposed schedule would have amounted to at least six weeks. Under the prior court order, the father would have received visitation for the majority of the summer once the child reached school-age. Under these circumstances, and with no evidence or findings to justify this minimal amount of substitute visitation, we find the substitute visitation schedule constituted an abuse of discretion.
Although the trial court determined that the father had not taken advantage of the Wednesday evening visits (the father's work was in Miami), and did not find the relationship between the father and the minor child to be "that strong," neither did the trial court question the father's sincerity in wanting to maintain a relationship with his child. The mother's proposed visitation schedule attests to the fact that she had no opposition to meaningful visitation between the father and minor child. Apart from the mother's relocation, there was nothing in the record that would have supported a reduction in the father's visitation as incorporated in the final judgment.
The trial court order further required the father to pay all of the travel expenses, even though the mother had offered to bear a portion of the expenses. We find this provision to be financially onerous. This onesided imposition of a significant economic burden on the father may have the practical effect of defeating even the limited visitation ordered and constituted an abuse of discretion.
The trial court further abused its discretion by imposing the requirement that the father fly to Chicago to pick up the minor child. Nothing in the record supports the need for such a provision and this requirement only adds to the father's increased financial burden.
It is obvious that a custodial parent's move to another state will necessarily and inevitably affect the noncustodial parent's ability to have the same type of visitation as when the parties lived in close proximity. The substitute visitation will no longer be frequent and continuous unless the noncustodial parent has the financial ability to travel often to the child's new home or the ability and desire to relocate.
"That the parents reside in different states is not necessarily adverse to the child's best interests where liberal visitation rights are protected." Sherman, 558 So.2d at 151. Some courts have observed that "extended visits may serve the parental relationship better than the typical weekly visit," id., or are at least sufficient to sustain a close relationship,[5]see Stockburger v. Stockburger, 633 So.2d 1140 (Fla. 2d DCA 1994).
In lieu of weekly or bi-weekly visitation, meaningful visitation when the custodial parent resides in a foreign jurisdiction necessarily will take the form of less frequent but more extended visits. Utilizing summer vacation as a time for more extended visits is the most logical alternative for school-age children.
With the focus of so much recent statewide and national attention on the absentee parent and the deadbeat dad, we should do everything within our power to encourage responsible parenthood, which consists not only of the legal obligation of financial support but also the maintenance of a meaningful relationship with the child. We should encourage the noncustodial parent, who is often the father, to view the relationship with his child not as an obligation which he fights every inch of the way, but as a responsibility he rushes to embrace. The ability of the noncustodial parent to develop and maintain a meaningful relationship with the child inures to the benefit of not only the parent, but also the child.
Due to the passage of time, the trial court may need to take additional testimony concerning the parties' present financial circumstances *652 and how the substitute visitation has in fact operated in the interim, as well as any potentially adverse impact on the minor child from any proposed visitation schedule. Accordingly, we reverse the order and remand for further proceedings consistent with this opinion.
FARMER, J., concurs.
STONE, J., dissents with opinion.
STONE, Judge, dissenting.
I would affirm the visitation schedule. Although different judges might well have provided for additional visitation, such as a provision for a spring visit or an additional few weeks in the summer, or might not have included the provision, inserted here, for a week of additional visitation with the paternal grandmother, I cannot conclude that this order constitutes an abuse of trial court discretion.
It is significant that there is no limitation on Appellant's right to visitation in Illinois, the only dispute being how often to put this four and one-half year old child on an airplane and how long is a reasonable summer visitation with a child of that age. I have little doubt that reasonable judges, attorneys, and parents would have much difficulty agreeing on what is best for the child on these facts. I note that Appellee's proposal, also rejected by the court, provided that the summer visitation be divided into two week maximum terms.
NOTES
[1] The minor child, Kristina, who was the parties' natural daughter, was born May 15, 1990. Robert, who was the mother's natural son, was adopted by the father. Robert was born October 21, 1976, and had reached the age of maturity by March 1994, when the order modifying visitation was entered.
[2] The order also allowed the father daily telephone contact and visitation "any time when he is planning to be in the greater Chicago area." However, there was no evidence that the father's job entailed travel outside of Florida or that the father's financial circumstances would allow him to take advantage of this provision.
[3] Justice Shaw, in his concurrence in Mize v. Mize, 621 So.2d 417, 421 (Fla.1993), flatly asserts that the conflict between the policy allowing relocation and the policy of shared parental responsibility is irreconcilable. In his opinion, the "virtual per se rule favoring removal denigrates the rights of Florida's noncustodial parents and directly violates our Legislature's clear statement of public policy equating the child's best interests with optimum involvement by both parents." Id. at 422.
[4] Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), review denied, 560 So.2d 233 (Fla.1990).
[5] On the other hand, Justice Shaw, quoting from Justice Schreiber in Cooper v. Cooper, 99 N.J. 42, 491 A.2d 606, 622-23 (Schreiber, J., concurring), modified, Cooper v. Cooper, 96 N.J. 294, 475 A.2d 588 (1984), and the psychological data referred to therein, has observed that "shorter, more frequent visitations [with the noncustodial parent] are preferable to fewer, longer ones." See Mize, 621 So.2d at 423.