789 So.2d 370 (2001)
Virginia MUNIZ, etc., Appellant,
v.
Juan MUNIZ, Appellee.
No. 3D00-312.
District Court of Appeal of Florida, Third District.
March 28, 2001.
Rehearing Denied July 27, 2001.
*371 Guy Spiegelman, Miami; Cynthia L. Greene, Miami, for appellant.
Douglas Isenberg, North Miami Beach, for appellee.
Before SCHWARTZ, C.J., and SORONDO, and RAMIREZ, JJ.
RAMIREZ, J.
Virginia Muniz appeals from an order which simultaneously denied her application to relocate her fourteen-year-old twin daughters from Miami to Jersey Island, United Kingdom, where she is now employed, and modified the award of primary physical residence of the children as provided in the final judgment of dissolution, from the mother to the children's father. We reverse under the authority of Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000),[1] because a modification of primary physical residence cannot be based solely on the preference of the children.
When the parties' marriage dissolved on December 12, 1988, the mother was designated the primary residential parent of their twin daughters, who at the time were three years of age. In the summer of 1998, the mother accepted a promotion from her employer, Banco Bilbao Vizcaya, which, including benefits, would more than double her yearly earnings. This promotion, however, required her to move to Jersey Island. In October, 1998, the mother notified the father that she planned to relocate with the girls. The father subsequently filed a motion for injunctive relief which resulted in an order that the children remain in Miami-Dade County with the father. In order to avoid a change in schools during the middle of the children's school year, the mother agreed that the father could serve as temporary residential parent from October, 1998 to May, 1999, when the school year would end. In any event, the children would have to transfer to a new school in the fall of 1999.
The mother first makes serious due process allegations which, if we were to affirm, would encourage trial by ambush. These allegations stem from the Guardian ad Litem's change in testimony. On September 20, 1999, the Guardian ad Litem testified that she had no recommendation on the ultimate outcome of the parents' custody dispute. On December 7, 1999, however, she changed her testimony and recommended that the children remain with the father. The father's counsel knew of the Guardian ad Litem's change in testimony because he recalled the Guardian ad Litem to the stand and never disclosed his intention to do so to opposing counsel until after the start of the hearing. Because we are reversing on the merits, however, this issue will not be addressed.
In Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000), we reversed a modification of custody where the wife moved to Utah and the trial court based its decision to change custody to the father on the preference of the children. We first stated that "[a] parent seeking to modify a prior custody award bears the extraordinary burden of demonstrating a substantial change in circumstances since the entry of the initial custody decree and that the child's best interest or welfare will be promoted by the change." Id. at 516. The majority held that, before modifying a custody award, Florida courts require "proof that a child's continuing residence with the custodial parent would be detrimental to or have an adverse impact upon the child." Id. In this case, the record is devoid of any evidence *372 that the mother's relocation would have an adverse effect upon the parties' twin girls. On the contrary, the trial judge found that the mother "offers her girls a role model of a professional woman on a successful career path, who is also an extremely devoted mother."
We also stated in Perez, that in the absence of compelling circumstances, a custodial parent's move to a foreign state was not itself a substantial change of circumstances which would support a change of custody. Id. at 517. In this case, the trial court stated that it had "heard substantial testimony regarding the life [the girls would lead] in Jersey and saw a video of the surroundings. It is quite lovely." The mother testified that the move would improve the general quality of life for the children. The uncontradicted evidence was that the girls would be attending private schools which are "feeder schools for Cambridge and Oxford."
A review of the trial court's careful and detailed order reviewing the criteria set forth in section 61.13(2)(d), Florida Statutes (1999), finds the parents essentially at equipoise, with the decisive factor being the preference of the children, as testified to by the Guardian ad Litem. Again, Perez, 767 So.2d at 518-19, explained that:
Generally speaking, the stated preference of a child in a modification proceeding is entitled to some weight if the child possesses sufficient maturity and understanding to make an intelligent choice. However, under Florida law, the stated preference of a child who possesses the requisite maturity to make an informed decision, without more, has never been found to be sufficient to sustain a change in primary residence. (citations and footnote omitted).
Thus, the stated preferences of the children cannot support the trial court's modification of custody in the absence of other viable or compelling reasons to modify what was, in this case, a ten-year-old custody order.
We therefore reverse and remand with directions that the court reinstate the mother as the primary residential parent and readjust the financial obligations accordingly.
Reversed and remanded.
SORONDO, J. (concurring)
I join Judge Ramirez in reversing the trial court because I believe I am compelled to do so by this Court's decision in Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000). In paragraph 14 of her Final Judgment on Pending Custody Modification and Relocation, the trial judge concludes as follows:
The Court finds that after considering all the factors set forth above, the testimony provided in Court, and the children's preferences, that it would be in the best interest of the girls to remain in Miami in the custody of their Father. The Court finds that the Mother's move is a substantial change of circumstances and that the stability that is provided for the daughters at this time is substantial.
(Emphasis added). In Perez, this Court specifically stated that
[i]n the absence of compelling circumstances... a custodial parent's move to a foreign state is not itself a substantial change of circumstances which would support a change of custody.
See also Zugda v. Gomez, 553 So.2d 1295, 1296 (Fla. 3d DCA 1989). There are no "compelling circumstances" in this record sufficient to alter the general rule, and the trial court did not articulate any other factor as constituting the necessary "substantial change of circumstance."
*373 I confess that I have struggled with this decision because of the amount of time that has passed since this litigation began and the substantially different situation in which the children find themselves. I firmly believe that Mrs. Muniz should have been allowed to relocate to Jersey Island with her children at the time she sought leave of court to do so. Because of the pendency of this litigation she was not, and now, two years later, this Court reverses the trial court and authorizes the move. The obvious problem is that the lives of these teenagers has greatly changed since this litigation began.[2]
At the time Mrs. Muniz left for Jersey Island, the children were completing the eighth grade. She envisioned that they would graduate and begin their high school education in Jersey Island. Because of this litigation, however, this did not happen. Instead, the children began high school in Miami and are now completing their second year.
During their freshman and sophomore years, the children have developed many close friendships and become extremely active in athletic activities. Whereas the move to Jersey Island might have been merely undesirable to them two years ago, such a move now will be unimaginably onerous.
By all accounts, Mr. and Mrs. Muniz are excellent parents who are devoted to their children. The trial judge was understandably impressed with both of them. In the wake of this victory, I hope that Mrs. Muniz will seriously weigh the present benefit of taking the children with her, against the effect that leaving their established surroundings will have on them. This will not be easy. Considerable financial resources have undoubtedly been expended in this lawsuit, not to mention the *374 bitterness that such prolonged litigation usually engenders.
In the very difficult and demanding business of parenting, sacrifices must be constantly made in the interest of our children. Some of these sacrifices are more painful than others, and severely test the extent of our selflessness. I urge all concerned in this very difficult situation to be wise and to consider only the best interest of these children. As naive as this suggestion may seem, I am as morally compelled to articulate it as I am legally compelled by this Court's precedent to reverse.
SCHWARTZ, Chief Judge (dissenting in part).
Ms. Muniz appeals from an order which simultaneously denied her application to relocate her fourteen year old twin daughters from Miami to the Island of Jersey in the English Channel, where she is now employed, and modified the award of primary physical residence of the children as provided in the final judgment of dissolution, from her to the children's father.[3] I agree with the court's reversal of the latter ruling, but do not as to the former.
The judgment under review ably and comprehensively summarizes the applicable facts and the manner in which the issues presented were resolved below:
1. The parties were divorced by a Final Judgment of Dissolution of Marriage that was entered on December 12, 1988.
2. The parties have twin daughters, Natasha Muniz and Yasmina Muniz, both born on October 10, 1985 (14 years old). The Mother was the Primary Residential Parent at the time of the Final Judgment of Dissolution of Marriage.
3. In the summer of 1998, the Former Wife accepted an offer for a promotion from her employer, the Banco Bilbao Vizcaya (BBV), which required her to move to Jersey Island in the United Kingdom. After investigating the living conditions and the schools for her children, she determined it would provide a good quality of life for the girls.
4. In October, 1998, the Former Wife informed the Former Husband that she was going to relocate with the children to Jersey Island, and he filed a Motion for Injunctive Relief. An Order was entered requiring the children to remain in Miami-Dade County with the Former Husband.
5. The Former Wife moved to Jersey Island and allowed the children to remain with the Former Husband, so that they could complete their eighth grade education at the school they had been attending.
6. The parties appeared before the General Master on the Former Husband's Motion for Temporary Primary Residential Responsibility and Motion for Child Support and the General Master recommended that the children reside in the temporary primary residential custody of the Former Husband and ordered the Former Wife to pay child support in the amount of $1,331.29 per month. The Report was approved by this Court on May 13, 1999. Thereafter, the Former Wife filed a Response to the Petition for Modification and a Counterpetition for Modification of Primary Physical Residence with a Request to Relocate with the children to Jersey Island.

*375 7. The Court appointed Ana Martin-Lavielle, Esq. as Guardian ad Litem for the children.
8. In order to determine the Former Husband's Petition for Primary Residence, the Court must determine that there has been a substantial change in circumstances. The Former Husband argues that the substantial change in circumstances is the Former Wife's relocation to Jersey Island. In order to resolve the Former Wife's Petition for Relocation, the Court must apply the factors in Florida Statute, Section 61.13(d).[4] Pursuant to the statute, no presumption arises in favor of or against the request to relocate.
9. The parties have agreed that the Court should consider both motions together under the standards of the Florida Statute.
10. The Court has considered the following:
a) Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
Clearly, this move has improved the general quality of life for the Mother. Her salary was substantially increased, so that she is earning an excess of $100,000.00 including salary and perks. She has an opportunity to expand her career in international banking and this position is the next logical step in that career path. The Court heard substantial testimony regarding the life in Jersey and saw a video of the surroundings. It is quite lovely. The Mother argues that the move would improve the general quality of life for the children as well because they would be attending excellent private schools which are "feeder schools for Cambridge and Oxford". It is her position that the move and exposure to another lifestyle along with access to the entire world would broaden the girls' horizons and provide them with a tremendous opportunity.
The testimony for the Father reveals that the girls are currently attending Lourdes Academy, a good parochial school. The girls are doing well in the school considering the upheaval in the family. The girls are also extremely involved in track and field events and have a full circle of friends, as is appropriate for teenage girls. He argues that they are happy, satisfied and comfortable in their lifestyle in the community where they have lived their entire lives. They also have substantial family in Miami on both the maternal and the paternal side. There are no family connections in Jersey Island. The maternal *376 family regularly exercises visitation with the girls.
b) The extent to which visitation rights have been allowed and exercised.
During the time that the Mother was the Primary Residential Parent and lived in Miami, the Father regularly exercised his visitation rights. Since the Mother has moved to Jersey Island, she has attempted to exercise as much visitation as possible, although there was some testimony that the Father has made it a little difficult for her. However, she regularly e-mails the girls and talks to them on the phone. The Court does not find that there has been any substantial interference with visitation rights by either party.
c) Whether the Primary Residential Parent once out of the jurisdiction will be likely to comply with any substitute visitation arrangements.
The Court has no doubt but that the Mother and Father will comply with substitute visitation arrangements.
d) Whether the substitute visitation would be adequate to foster a continuing meaningful relationship between the children and the Secondary Residential Parent.
The Mother suggests that should the girls be with her, visitation should be alternating Christmas each year and the Father could have the Summer and the Easter break. The Father argues that this is not sufficient visitation for him to foster his relationship with the girls. Since he has been the Primary Residential Parent, the testimony at trial revealed that he has been extremely involved with their day to day lives. In fact, he changed jobs to one that would give him more flexibility with his time, so that he is able to drop the girls off at school or pick them up after school and attend most of their after school sporting events. He has developed a strong relationship with them and does not want to lose that connection that he has with them, and that they also have with his current wife and family. The Mother is in a similar position in that she is no longer involved in the day to day lives of the children although she was from the time of the divorce until 1998. For the past year and a half she has seen the girls for blocks of time during their vacation. They have traveled to England with her and throughout Europe on holidays. Nevertheless, the Court notes that according to the testimony both girls have strong relationships with their parents.
e) Whether the cost of transportation is financially affordable by one or both parties.
The Mother indicates that she can and will contribute substantially to the cost of visitation for the children if they are living with her. There was not otherwise substantial testimony regarding the contribution to travel. The Mother earns more than the Father, however both would be able to contribute to the cost of transportation.
f) Whether the move is in the best interest of the child.
The Court has many factors to consider in this regard. The first factor that the Court has considered is that the Guardian ad Litem has recommended that the girls remain in Miami with their father. In the Guardian ad Litem's initial substantial report, she did not make a recommendation either as to custody or as to the move. She did suggest factors to consider. She indicated that both parents are capable of providing *377 for the children's basic needs. Both children have strong bonds with their parents. There is no issue regarding domestic violence. There is no issue regarding continuing contact.
Both parents provide good physical homes for the children. The Guardian ad Litem reported that the children have strong ties to this community and that the only person absent from their lives at this time is their mother because they have all of their other relatives here. At the time of her report, she indicated that the children did not express a preference to her. At the time of the second day of trial in this case, the Guardian had done further research and spent more time with the girls.[5] They expressed to her at that time that they preferred to stay in Miami and did not want to move to Jersey Island. The Mother also testified that the daughters have told her they do not want to move to Jersey Island, however, she does not believe that they are of sufficient maturity to make such a decision. The Guardian believes they are. The Father and the Father's relatives testified that the girls wish to remain in Miami. This fact is not disputed.
The Court also finds that this trial has brought to light the significant differences between the Mother and the Father, their personalities and their goals. It probably illuminates better than anything else the reason why they should not be married to one another any longer. Their values, lifestyles and ambitions are completely different.
11. The Court finds this to be a difficult case because both parents want what is best for their children and both parents have quite different opinions as to what is best for their children. The Mother, on the one hand, offers her girls a role model of a professional woman on a successful career path, who is also an extremely devoted mother. She is reaching her goals and wishes to be able to share the world with her daughters. The opportunity that she sees for them is unlimited and it appears to be a rare opportunity to expose the girls to the world. The Mother also asserts that given the daughters' teen years, that it would be best for them to be with their *378 mother as they develop through these times.
12. The Father, on the other hand, does not see this as being such a great opportunity. He seems to believe that offering the girls a secure home in a community in which they've grown up, surrounded by maternal and paternal relatives of all generations, is the best thing he can provide for his daughters. He also provides them with active participation in their lives and support through these difficult years. The Father believes that he is adequate to provide them with support, including educational, emotional, and moral guidance that they need at this time.
13. Prior to this litigation, the parents seemed to get along and did not involve the children in their disputes. Since this litigation has begun, there appears to be substantial anger between the families. The Mother's family in particular has made negative comments regarding the Father in front of the children, so as to make it uncomfortable for them to visit. The parties are cautioned that the adult issues are not to be discussed before the children and they are to speak positively about the other parent in the presence of the children.
14. The Court finds that after considering all of the factors set forth above, the testimony provided in Court, and the children's preferences, that it would be in the best interest of the girls to remain in Miami in the custody of their Father. The Court finds that the Mother's move is a substantial change of circumstances and that the stability that is provided for the daughters at this time is substantial. Based on these findings of fact, it is hereby
ORDERED AND ADJUDGED
1. The Former Husband's Petition for Modification of Primary Residential Custody is granted. He shall be the Primary Residential Parent and the Mother shall be the Secondary Residential Parent.
2. The Former Wife's Counterpetition and Motion to Relocate is denied.
3. The Court awards the Wife visitation of Spring break each year, the entire Summer vacation except the first week after school ends and the first week before school begins, Christmas vacation in alternating years with the year 2000 being the Father's Christmas holiday. The Court also awards the Mother visitation with her daughters when she visits Miami with 48 (fortyeight) hours notice to the Father. If she is in Miami during Christmas vacation that belongs to the Father, then she and the Father will split the Christmas vacation equally, the Father will have the first week and the Mother will have the second week, unless they agree otherwise. She will have unlimited telephone access and other forms of communication with the daughters. The parties may alter the visitation by agreement in writing signed by both parties.
4. The Mother shall continue to pay child support in the amount of $1331.29. The Child support is to be sent directly from the Mother to the Father. The children are not to be involved in transferring child support payments, nor are they to be involved in the dispute between the parents.
5. The Mother is entitled to one free trip per year and therefore she shall pay for Christmas and summer travel for the girls. The Father shall pay for the travel at spring break.
6. The Father shall be entitled to visitation with the children in Jersey Island during the summer for one week.

*379 7. The Mother's family in Miami may continue their visitation with the girls.

I.
I think it is a seriousand totally avoidable legal and human mistake for the majority to revise that portion of this judgment which permits these teenagers to remain in South Florida and, instead, to force them to leave their lifelong home here for a new one in Great Britain. It seems apparent from the judgment that it represents an appropriate exercise of the trial court's discretion on that issuewith which we cannot justifiably interfereconsidered in the light both of the applicable statutory factors, and those stated in previous decisions on the subject which the statute mirrors. See § 61.13(2)(d), Fla. Stat. (2000); Flint v. Fortson, 744 So.2d 1217 (Fla. 4th DCA 1999); Borchard v. Borchard, 730 So.2d 748 (Fla. 2d DCA 1999); Flannery v. Crowe, 720 So.2d 308 (Fla. 4th DCA 1998); Willey v. Willey, 683 So.2d 647 (Fla. 4th DCA 1996); Grube v. Grube, 680 So.2d 461 (Fla. 1st DCA 1996); Jones v. Jones, 633 So.2d 1096 (Fla. 5th DCA 1994), review denied, 639 So.2d 978 (Fla.1994); see generally, Young v. Hector, 740 So.2d 1153 (Fla. 3d DCA 1998) (upholding trial court's discretion on custody issues), review dismissed, 763 So.2d 1046 (Fla.2000). In fact, the denial of relocation would likely have been regarded as an appropriate discretionary call even in the pre 61.13(2)(d) period in which at least something like a "presumption" in favor of relocation under similar circumstances obtained. See Russenberger v. Russenberger, 669 So.2d 1044 (Fla.1996)(citing and adopting Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), review denied, 560 So.2d 233 (Fla.1990)); Hill, 548 So.2d at 705, 708 n. 3 (specially concurring opinion) ("It might be appropriate to suggest, however, that the general principle [of permitting relocation] might not apply, for example, if, as may more likely occur when older children are involved, the trauma of moving from the youngster's familiar surroundings including other members of the family, friends, school and the likeoutweighs that involved in separating from the custodian. See Pino v. Pino, 418 So.2d 311 (Fla. 3d DCA 1982).").

II.
As I think is justified by the applicable law, and although the court regrettably does not do so, I would, however, draw a distinction between the relocation question which is controlled by section 61.13(2)(d), Fla. Stat. (1999), and the issue of modifying a previous award of custody which is governed by such cases as Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000), upon which both of the majority opinions heavily rely. On the latter issue, I agree with the mother's alternative position that, because the only change in circumstance is the mother's own relocation, there is no legal justification for a permanent modification of the initial award of the children's primary physical residence to her. Perez, 767 So.2d at 517 ("In the absence of compelling circumstances, however, a custodial parent's move to a foreign state is not itself a substantial change of circumstances which would support a change of custody.")[e.s.]; see VonHegel v. VonHegel, 732 So.2d 1131 (Fla. 2d DCA 1999); Lenders v. Durham, 564 So.2d 1186 (Fla. 2d DCA 1990); Finney v. Giddens, 707 So.2d 856 (Fla. 2d DCA 1998); Schweinberg v. Click, 627 So.2d 548 (Fla. 5th DCA 1993); cf. Goodmon v. Goodmon, 779 So.2d 490 (Fla. 2d DCA 2000).
Accordingly, I would affirm the right of the children to remain in Miami but would order that in place of the award of primary physical residence to the husband, he should be granted only temporary primary *380 residential responsibility which should terminate and the mother restored to primary physical residential responsibility when and if she returns to live in Miami-Dade county. The other provisions of paragraphs three through seven of the final judgment, which deal with mutual visitation and child support, would, under my view, remain in effect, subject to reconsideration if Ms. Muniz returns to Miami.

III.
In my judgment, this result would at the same time, uphold and enforce the rules of substantive family law and of appropriate appellate deference to the exercise of trial court discretion which should animate all our decisions in this field and, perhaps more important, would avoid the injustice and personal hardship which the court itself acknowledges will be the inevitable result of its decision. I am afraid that the majority view to the contrary represents another example of the "the-law-made-medo-it" process I have previously decried in Doctor v. State, 677 So.2d 1372, 1373-4 (Fla. 3d DCA 1996) (specially concurring opinion), approved, 698 So.2d 1224 (Fla. 1997); Schneer v. Allstate Indemnity Co., 767 So.2d 485, 491 n. 7 (Fla. 3d DCA 2000) (partial dissenting opinion) and Hechtman v. Nations Title Ins. of New York, Inc., 767 So.2d 505, 508 (Fla. 3d DCA 2000) ("the ... majority professes itself regretfully bound by the letter of the law to reach what it seems to recognize is an unjust result") (dissenting opinion). I feel compelled to do so again.
NOTES
[1] In fairness to the trial judge, the Perez decision was published on July 5, 2000, more than six months after she entered her Final Judgment on Modification and Relocation.
[2] This Court is always willing to expedite appeals where the justice of the cause requires it. To my knowledge no such effort was made in this case.

In conjunction with her motion for rehearing and rehearing en banc, Mrs. Muniz filed a Motion to Correct Concurring Opinion. This motion has been denied by clerk's order issued July 27, 2001. Specifically, the motion seeks withdrawal of this footnote's assertion that no effort was made to expedite this appeal and argues that "to the contrary ... Appellant/Wife made numerous (and unfortunately unsuccessful) attempts to have this appellate proceeding expedited." The motion then tracks these efforts beginning on September 18, 2000.
The history of this case reveals that the notice of appeal was filed on January 25, 2000. Thereafter, appellant filed motions for extension of time to file her initial brief on April 11, May 11, June 13, July 7 (seeking extension to and including July 10) and July 12 (seeking extension to and including July 14). All of these extensions were granted by this Court, without objection. The initial brief was filed on July 13, 2000, 170 days after the filing of the notice of appeal.
Appellee's answer brief was due but not filed on August 4, 2000. On September 21, 2000, Appellant filed a Motion to Determine Appeal Solely on Basis of Initial Brief. This motion was denied and Appellee was ordered to file and answer brief within ten days. Thereafter, Appellee filed a Motion for Extension of Time through November 1, 2000. This motion was granted.
Appellant then filed a Renewed Motion to Determine Appeal Solely on Basis of Initial Brief and to Schedule Oral Argument. This motion was also denied.
At no time did Appellant file a motion to expedite appeal. Such a motion is reasonably expected to be filed immediately after the filing of the notice of appeal. When this is done, and where there is a needas in this casethis Court will immediately order an abbreviated briefing schedule. The motions filed by Appellant herein were requests to preclude Appellee from filing an answer brief, not motions to expedite. Nevertheless, regardless of what one chooses to call the motion, it would be grossly unfair, absent exceptional circumstances, to allow the Appellant almost six months to file her initial brief, then "expedite" (pronounced "squeeze"), her opponent to file an immediate response.
[3] For an explanation of the tone and form of this opinion (and of a good deal of the majority's), see Insurance Company of North America v. Pasakarnis, 425 So.2d 1141, 1142 n. 1 (Fla. 4th DCA 1982)(dissenting opinion).
[4] Section 61.13(2)(d)

(d) No presumption shall arise in favor of or against a request to relocate when a primary residential parent seeks to move the child and the move will materially affect the current schedule of contact and access with the secondary residential parent. In making a determination as to whether the primary residential parent may relocate with a child, the court must consider the following factors:
1. Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
2. The extent to which visitation rights have been allowed and exercised.
3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
5. Whether the cost of transportation is financially affordable by one or both parties.
6. Whether the move is in the best interests of the child.
[5] In a separate, indeed, her first point on appeal, the mother complains bitterly, and, I must say, justifiably, about the manner in which the guardian ad litem's testimony was presented below. In fact, in her written report and when she first testified at trial the guardian ad litem, Ms. Martin-Lavielle, expressed no recommendation as to the relocation question and stated that the girls had not expressed a preference of their own to her. Later in the trialentirely without notice to Ms. Munizhowever, she re-appeared, re-testified, and, this time both made a strong recommendation and reported that the girls had indeed expressed their desire to stay in Miami. No satisfactory explanation has been given for this alteration of Ms. Martin-Lavielle's testimony. I may well agree with the appellant's characterization of these circumstances as an infringement of her right to procedural due process of law in the conduct of the trial. Nevertheless I would not reverse because of them. This is so because (a) there was other ample, indeed undisputed, evidence of the girls' preference to remain in Miami; (b) the mother's counsel did not seek a recess or continuance to present any such contrary evidence, and none has been provided or proffered at any subsequent stage in this proceeding; and (c) whenever and however expressed, the opinion or recommendation as to the outcome of a case by a guardian ad litem, who is neither an expert nor a judicial officer, see §§ 61.401, 61.403, Fla. Stat. (1999); Simms v. Department of Health & Rehab. Servs., 641 So.2d 957, 963 (Fla. 3d DCA 1994), review denied, 649 So.2d 870 (Fla.1994), should be given minimal, if any, evidentiary weight or legal significance. I am convinced therefore that any subsequent correction of the defect in procedure would result in the same outcome, so that the incident is properly regarded as harmless, albeit serious, error.