820 So.2d 409 (2002)
In the Interest of BB.
Rosemarie Spano, Petitioner,
v.
Department of Children & Families, Respondent.
No. 3D02-1667.
District Court of Appeal of Florida, Third District.
June 26, 2002.
*410 Diane H. Tutt and Sharon C. Degnan (Plantation), for petitioner.
Calianne P. Lantz, Assistant District Legal Counsel, for respondent.
Before SCHWARTZ, C.J., and GREEN and RAMIREZ, JJ.
PER CURIAM.
The mother petitions this court for the issuance of a writ of certiorari to quash a "Shelter Hearing Order" which prohibits all contact between the mother and her minor daughter. Based upon our conclusion that this order is a departure from the essential requirements of law, for the reasons which follow, we grant certiorari and quash the order of the juvenile court.
At issue in this case is the well-being of an eleven year old child who has unwittingly been used as a pawn in an unrelenting legal chess game that her attorney father has waged against her mother. We note that this is the fifth appearance of this matter before this court.[1] In order to understand the dynamics of the dispute before us, it is necessary to elucidate the prior involvement of the Department of Children and Families ("DCF"), the juvenile court and the family court in these proceedings.
So far as the record reveals, this legal dispute between the child's parents over visitation began in the year 2000 when the father petitioned to permanently modify his daughter's primary residence. In early 2001, the mother and father entered into a detailed amicable mediated settlement agreement which provided that the parties would have shared parental responsibility for their daughter and neither parent would be designated the daughter's primary custodial parent. On April 30, 2001, upon the recommendation of the parties, the Guardian Ad Litem, and the court appointed psychologist, the trial judge in the family division entered an Agreed Final Judgment Modifying Parental Responsibility and Other Matters. The final judgment ratified, approved, and adopted the parent's mediated settlement agreement as to visitation rights with the minor child.
Less than two months later, the father instituted a new round of litigation based upon information known to him when he entered into the mediated settlement agreement. Specifically, he filed an ex parte emergency motion in the family court to temporarily suspend the mother's visitation on grounds that she had falsely reported a charge of child abuse against him. On June 27, 2001, based upon a police report filed by the father, the mother was arrested on charges of falsely reporting child abuse in violation of section 39.205(6), Florida Statutes.[2] As a result of *411 her arrest, the family court held a hearing on the father's motion to modify and temporarily suspend the mother's visitation. This hearing, coincidentally, was held the day after the mother was to begin her extended summer visitation with her daughter pursuant to the parties' agreement. The family court temporarily granted the father's motion without prejudice to a full hearing on the motion and ordered that the mother's visitation rights be restricted to supervised, therapeutic visitation at Barry University. The mother sought an expedited interlocutory appeal of this ruling.
In the interim, a DCF agent filed a dependency petition in the juvenile court, at the behest of the father, based upon the same allegations raised in the family court. Another hearing, without the mother, was held wherein DCF's attorney candidly admitted that the allegations contained in the dependency petition were insufficient to bring this matter into the DCF system. Several days later, that same DCF attorney entered a Notice of Voluntary Dismissal of the dependency case.
Almost immediately thereafter, the father filed his own dependency petition wherein he adopted and incorporated the allegations of DCF's dismissed petition. He appeared again, ex parte, before the juvenile court below. The court, referring to the order issued in the family court, stated that it would be unable to enter an order different from the one entered by the family court judge. Notwithstanding, the juvenile court below did not dismiss the petition and set a subsequent hearing for September 10, 2001.
Prior to this scheduled juvenile court hearing, we remanded the family court's temporary therapeutic supervised visitation order for a full evidentiary hearing to be held no later than September 30, 2001. After conducting multiple evidentiary hearings, the family court entered a modification order which precluded the mother from any telephone contact with her daughter and made permanent the supervised visitation scenario that had been implemented temporarily back in July of 2001. Upon entry of this order, the mother appealed. The father thereafter dismissed his dependency petition in the juvenile court.
On the mother's appeal, we reversed finding the modification order to be a gross abuse of discretion where the evidence presented in support of the modification pre-dated the parties' mediated settlement agreement. In addition, we found an abuse of discretion where there had been no showing of a subsequent substantial change in circumstance and detrimental harm to the child to justify a modification of visitation. See Spano v. Bruce, 816 So.2d 714 (Fla. 3d DCA 2002), citing Perez v. Perez, 767 So.2d 513 (Fla. 3d DCA 2000) and Muniz v. Muniz, 789 So.2d 370 (Fla. 3d DCA 2001). Moreover, and what may have spawned this current dispute, we ordered that the mother expeditiously be given "make-up visitation" with the child to compensate for all visitation lost since July 27, 2001.
In accordance with this court's mandate, the parties, including the father and the guardian ad litem, discussed and participated in resolving the make-up visitation issue by agreeing that the daughter would spend the entire summer residing with the mother, and the father would exercise visitation every Wednesday and every other weekend.
*412 Curiously, less than a week before the daughter was supposed to visit the mother's home for the summer, DCF filed an affidavit and petition for placement in shelter in the juvenile court below. All but one of the allegations contained in this petition were the same recycled matters we rejected as insufficient in the family court appeal. Those were the same matters which DCF itself had earlier acknowledged were insufficient to bring this matter into the dependency arena prior to its voluntary dismissal of the petition. The only new allegation which surfaced in the petition for shelter was the child's claim that on a recent visit with the mother, the mother had pulled the child's hair, pushed the child on the bed, and made a motion to hit the child. The child also claimed that the mother had called her a derogatory name.
On the same day that the petition was filed, the trial court granted an immediate shelter hearing with only DCF, the Guardian ad Litem and the father present. DCF informed the trial court that it had provided notice to the mother by leaving a message on the mother's answering machine informing her of the shelter hearing, but the mother "just did not show up." So, once again, without the mother having any opportunity to reply, rebut or defend herself, the court held a hearing regarding the mother's right to visitation with her daughter. This hearing began with the following colloquy:
The Court: What is the status of the family case?
DCF Attorney: What happened was, Your Honor, theywhen you read the Judge's Visitation Order, you said this is what I would have done, and that Judge Karlan said that she would handle the that she would handle all the issues that needed to be in this Court, and at that time you relinquished jurisdiction.
Guardian Ad Litem: Judge, I don't know if Your Honor recalls this case, but
The Court: I recall it very well.
Guardian ad Litem: Okay.
DCF Attorney: Yes, what happened was, the Visitation Order was put in place that you liked, andbut on appeal it was reversed.
So now the mother has full access to the child.
And the child's supposed to spend the summer with the mother.

So we need this Court to step in. Bottom line. (emphasis added).
At the conclusion of this hearing, the juvenile court found that there was probable cause to believe that the minor daughter was a "dependent child" pursuant to section 39.401(1)(a)(1), Fla. Stat. (1999).[3] The court below then issued a no-contact order barring the mother from any contact whatsoever with the minor child and scheduled a filing hearing for six weeks later. It is from this order that the mother seeks certiorari relief.
At the outset, given the exchange at the opening of the shelter hearing we find DCF's current contention that it was in no way attempting to evade and/or circumvent our previous mandate in the family court case to be disingenuous at best.
*413 As previously stated, DCF's petition for shelter relied primarily on the same allegations that this court rejected in the family court modification case as being insufficient, as a matter of law, to support a modification of visitation. This evidence was likewise insufficient to support a finding of dependency in the instant case.[4]See generally, Green v. Dept. of Health and Rehab. Serve., 696 So.2d 1351, 1352 (Fla. 5th DCA 1997) (dependency court standard for modification of visitation is same as family court's, i.e. "there has been a substantial and material change in circumstances, and that the best interest of the child will be promoted by the change.").
Therefore, we are left to now consider whether the "new" allegations purportedly raised by the child, standing alone, are sufficient to support a finding of abuse to warrant a shelter order under chapter 39. Assuming arguendo, the truth of such allegations, we find, as a matter of law, that they do not. See J.C. & S.C. v. Dept. of Children & Families, 773 So.2d 1220 (Fla. 4th DCA 2000) (holding that spanking of child with belt that left bruising of child's buttocks was insufficient to support finding of abuse within meaning of child dependency statute); In re S.W., E.J. and L.M., 581 So.2d 234 (Fla. 4th DCA 1991) (finding of abuse not supported where mother hit child with belt that left bruising but required no treatment); In re W.P., 534 So.2d 905 (Fla. 2d DCA 1988) (evidence that parents slapped child on side of face with open hand and pulled child's hair insufficient to find parents abused child within meaning of child dependency statute). Thus, the lower court's finding of probable cause in this case was a complete departure from the essential requirements of law.[5]
Finally, we want to make it clear that our holding does not suggest that a visitation order entered in a family court proceeding can never be altered by an order of a dependency court That is clearly not the law, nor should it be. Section 39.013, Fla. Stat. (2001). Should legally sufficient evidence ever be presented to DCF that this child is in danger of abuse, abandonment or neglect by either parent during the course of that parent's visitation with the child, we would expect the other parent and/or DCF to step in to prevent such harm pursuant to Chapter 39. We are, however, greatly distressed in this case by the ease with which the father has been permitted to needlessly expend the scant resources of DCF and the dependency court to date with insufficient evidence in an effort to renege on a mediated settlement agreement he voluntarily entered into with the mother.
Accordingly, we quash the shelter order of the juvenile court in its entirety. In addition, if it has not occurred yet, we order that the mother's make-up visitation with her daughter resume forthwith. See Spano v. Bruce, 816 So.2d 714 (Fla. 3d DCA 2002).
This decision shall take effect immediately without regard to the filing or disposition of any motion for rehearing.
Petition granted.
NOTES
[1] See Spano v. Bruce, 816 So.2d 714 (Fla. 3d DCA 2002); Spano v. Bruce, 795 So.2d 71 (Fla. 3d DCA 2001); Spano v. Bruce, 785 So.2d 494 (Fla. 3d DCA 2001); Spano v. Bruce, 780 So.2d 82 (Fla. 3d DCA 2000).
[2] This statute provides that:

A person who knowingly and willfully makes a false report of child abuse, abandonment or neglect, or who advises another to make a false report, is guilty of a felony of the third degree, punishable as provided in s. 775.082 or s. 775.083. Anyone making a report who is acting in good faith is immune from any liability under this subsection.
§ 39.205(6), Fla. Stat. (2000).
[3] Section 39.401 provides in pertinent part that:

(1) a child may only be taken into custody:
(a) Pursuant to the provisions of this part, based upon sworn testimony, either before or after a petition is filed; or
(b) By a law enforcement officer, or an authorized agent of the department, if the officer or authorized agent has probable cause to support a finding:
1. That the child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment.
§ 39.401(1)(a)(1), Fla. Stat. (1999).
[4] This is especially true where, as here, DCF had already voluntarily dismissed a petition based upon these same allegations.
[5] Probable cause is "a reasonable ground for suspicion, or knowledge of facts and circumstances which would warrant an individual of reasonable caution in believing that an offense had been committed." Cross v. State, 432 So.2d 780, 782 (Fla. 3d DCA 1983).