NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


In the Interest of B.F. and A.F., children.                )
_____ )
                                                                           )
DEPARTMENT OF CHILDREN AND                    )
FAMILIES and GUARDIAN AD LITEM             )
PROGRAM,                                                           )
                                                                           )
                    Petitioners,                                    )
                                                                           )
v.                                                                          )          Case No. 2D19-459
                                                                           )
R.F. and S.M.,                                                     )
                                                                           )
                    Respondents.                                 )
_____ )

Opinion filed November 22, 2019.

Petition for Writ of Certiorari to the Circuit
Court for Hillsborough County; Robert A.
Bauman, Judge.

Ashley Moody, Attorney General,
Tallahassee, and Mary Soorus, Assistant
Attorney General, Tampa, for Petitioner,
Department of Children and Families.

Joanna S. Brunnell and Thomasina F.
Moore, Tallahassee, for Petitioner,
Guardian ad Litem Program.

Melissa A. Cordon, Tampa, for
Respondent, R.F.

Ita M. Neymotin, Regional Counsel, Second District, and Joseph Thye Sexton, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Fort Myers, for Respondent, S.M.

BLACK, Judge.

The Department of Children and Families (the Department) challenges the order that denied its petition to shelter B.F. and A.F. (the Children) from R.F. (the Father) and S.M. (the Mother).[1]  The Department argues that this proceeding should be considered as an appeal rather than a certiorari proceeding and that the trial court erred in finding that there was no probable cause to shelter the Children.  We agree on both accounts.[2]  And although a subsequent order sheltering the Children has been rendered, we have decided this case because it presents issues "capable of repetition, but evading review."  See Kopelovich v. Kopelovich, 793 So. 2d 31, 32 (Fla. 2d DCA 2001).

On January 29, 2019, the Department removed the Children from the Father's care due to allegations of sexual abuse.  On the same day, the Department filed its shelter petition.  A shelter hearing was conducted on January 30, 2019.  At the

_____

[1]The Department (joined in a separate brief by the Guardian Ad Litem Program (GALP)) also argues that the trial court denied it procedural due process by refusing to allow B.F. to testify in camera.  Because the Department established that there was probable cause to shelter B.F. without any additional testimony, we need not address this issue.

[2]Although the GALP recognized itself as a respondent in the certiorari proceeding, in light of the GALP's notice of joinder and its arguments, it has been denominated as an appellant in this appeal.

conclusion of the hearing, the court ordered the Children to undergo sexual abuse evaluations and set the matter for review on the following day. At the January 31, 2019, review hearing, the Department reported that it had not been able to facilitate sexual abuse evaluations of the Children. The court allowed another twenty-four hours to have the evaluations performed and set a second review hearing for the following day. On February 1, 2019, the court held the final review hearing.

Conflicting versions of events leading to the removal of the Children and the filing of the shelter petition were presented at the hearings. The child protective investigator (CPI) had interviewed both B.F. and the Father. The CPI testified as follows regarding the statements made by B.F. during the interview. On January 28, 2019, the Father had been drinking and told B.F. that he was going to "check her." B.F., who was sixteen years old at the time, believed that the Father wanted to do so to determine whether she was sexually active. According to B.F., the Father ordered B.F. to pull down her pants and underwear and he touched her genitals, making lewd comments as he did so. B.F. told the CPI that the Father had tried to check her previously while intoxicated.

The CPI also testified regarding the Father's interview. The Father told the CPI that he had concerns about B.F.'s personal hygiene. The Father admitted to the CPI that he had instructed B.F. to take her clothes off so that he could "assess the situation." The Father originally denied touching B.F., but after questioning by the CPI, he admitted to touching her thighs and pulling her legs apart to check her.

The Father testified during the shelter and review hearings and made similar admissions. He also testified that he has no medical training and did not even know what he was trying to find.

At the conclusion of the hearing, the trial court found that the Father lacked a "sexual" motive, denied the Department's petition for placement in shelter care, and denied the Department's subsequent motion to stay pending review. The Department timely filed a notice of appeal.[3]

## I. Procedural Posture

This court initially converted the Department's appeal to a petition for writ of certiorari, relying on Department of Children & Families v. B.B., 257 So. 3d 171 (Fla. 2d DCA 2018).[4] The Department then filed a petition for writ of certiorari. In the petition, however, the Department argues that the order denying its shelter petition is a final order subject to appellate review. The Department acknowledges that orders granting shelter petitions are often treated as nonfinal orders subject to certiorari jurisdiction, but it argues that once an order denying a shelter petition is entered judicial labor has ended. We agree. The order in this appeal—a denial of a shelter petition and nothing else—is a final order; judicial labor ended once the court denied the

---

[3]The Department filed a status report on October 2, 2019, advising this court that the trial court had sheltered the Children on October 1, 2019.

[4]B.B. is a memorandum opinion and offers no rationale for the decision or any relevant legal analysis. Cf. Gift of Life Adoptions v. S.R.B., 252 So. 3d 788, 791 n.4 (Fla. 2d DCA 2018) (stating that a memorandum opinion addressing a petition for writ of certiorari that fails to disclose its jurisdictional basis is not controlling). Instead, B.B. merely makes a conclusory recitation of the appellate jurisdictional mechanism employed by the court in that case. See B.B., 257 So. 3d at 171 ("We treat the appeal as a petition for writ of certiorari and deny the petition."). As a result, B.B. does not control whether the order now under review is subject to plenary or certiorari jurisdiction.

Department's shelter petition. See M.M. v. Fla. Dep't of Children & Families, 189 So. 3d 134, 137 (Fla. 2016) ("An appeal from a final order is appropriate when judicial labor has ended." (citing S.L.T. Warehouse Co. v. Webb, 304 So. 2d 97, 99 (Fla. 1974))).

## II. Merits

Section 39.402(1)(a), Florida Statutes (2018), provides for the placement of a child in shelter care prior to a court hearing, unless ordered by the court under chapter 39, if "there is probable cause to believe that . . . [t]he child has been abused, neglected, or abandoned, or is suffering from or is in imminent danger of illness or injury as a result of abuse, neglect, or abandonment." Id. "[I]n order to continue the child in shelter care[,] . . . [t]he [D]epartment must establish probable cause that reasonable grounds for removal exist and that the provision of appropriate and available services will not eliminate the need for placement . . . ." § 39.402(8)(d)(1). We review de novo the legal question of whether there was probable cause given the facts. See League v. State, 778 So. 2d 1086, 1087 (Fla. 4th DCA 2001) (citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). "The trial court must apply the same standard used for an arrest warrant when determining whether there is probable cause to shelter a child." N.H. v. Dep't of Children & Families, 192 So. 3d 592, 594–95 (Fla. 2d DCA 2016) (citing Fla. R. Juv. P. 8.305(b)(3)). "Probable cause is 'a reasonable ground for suspicion, or knowledge of facts and circumstances which would warrant an individual of reasonable caution in believing that an offense had been committed.' " Spano v. Dep't of Children & Families, 820 So. 2d 409, 413 n.5 (Fla. 3d DCA 2002) (quoting Cross v. State, 432 So. 2d 780, 782 (Fla. 3d DCA 1983)). "The court may base its [probable cause] determination on a sworn complaint, testimony, or an affidavit and may hear all relevant

and material evidence, including oral and written reports, to the extent of its probative value even though it would not be competent at an adjudicatory hearing." Fla. R. Juv. P. 8.305(b)(5).

" 'Abuse' means any willful act or threatened act that results in any physical, mental, or sexual abuse, injury, or harm that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired." § 39.01(2). Sexual abuse of a child is defined as "[t]he intentional touching of the genitals or intimate parts, including the breasts, genital area, groin, inner thighs, and buttocks, or the clothing covering them, of either the child or the perpetrator." § 39.01(77)(d). Sexual abuse does not, however, include acts performed in the course of normal caregiver responsibility or acts performed for a valid medical purpose. Id.

Here, the evidence was sufficient to establish probable cause to shelter the Children. B.F. told the CPI that the Father touched her genitals, and the Father testified that he touched B.F.'s thighs and pulled her legs apart; either scenario meets the statutory definition of sexual abuse. Moreover, neither statutory exception applied as the Father's inspection was not an act that could have reasonably related to caregiver responsibility, nor was it for a valid medical purpose. The Father admitted that he had no medical training and that he did not even know what he was looking for when he decided to examine B.F. And according to B.F., the Father had been drinking when he examined her.

The trial court determined that there was no sexual aspect to the Father's actions and thus no sexual abuse. But in so determining, the trial court misinterpreted the requirements of the law—creating an intent element not present in the statute—and

reached an incorrect legal conclusion.  "[T]he intentional touching of a child's genitals, genital area, or groin constitutes sexual abuse.  Whether the person doing the touching intended the touching to be sexual, playful, mean-spirited, or otherwise, is not contemplated by the statute."  Fla. Dep't of Children & Families v. A.R., 253 So. 3d 1158, 1166 (Fla. 3d DCA 2018).  By statute, touching of the inner thighs constitutes sexual abuse.  § 39.01(77)(d).  The trial court erred by reading a sexual motive into the statutory requirements for sexual abuse where none is present.

Furthermore, A.F., who was less than two years younger than B.F., also lived with the Father.  Even without a direct allegation of abuse as to A.F., the significant risk of harm warranted her removal as well.  See N.H., 192 So. 3d at 595 ("[T]he substantial risk of significant harm to a sibling can warrant the removal of both children, even though one child has yet to be abused.").

After a thorough review of the record, we conclude that the trial court incorrectly applied the law because the evidence presented was sufficient to shelter the Children where there was probable cause of abuse.  And although the Children have now been sheltered, because the trial court read a sexual motive into the statutory requirements for sexual abuse where none is present the issuance of this opinion is necessary to ensure that the error is not repeated.

Reversed.


CASANUEVA and SALARIO, JJ., Concur.