633 So.2d 1140 (1994)
Lisa P. STOCKBURGER, Appellant,
v.
Bruce H. STOCKBURGER, Appellee.
No. 93-01298.
District Court of Appeal of Florida, Second District.
March 18, 1994.
Michael L. Hastings, St. Petersburg, for appellant.
James W. Denhardt, St. Petersburg, for appellee.
LAZZARA, Judge.
The mother, who is the custodial parent of the parties' two minor children, challenges the trial court's order denying her supplemental petition to modify the final judgment of dissolution of marriage in which she requested permission to change her residence to Raleigh, North Carolina, with the children and to restructure the father's visitation schedule. She argues the trial court erred by concluding the move would not be in the best interests of the children. We agree and reverse.
*1141 The parties married in Pinellas County in April of 1980 and divorced there in November of 1990. The two children of this marriage are now twelve and thirteen years of age. They have always lived and attended school in the Pinellas area and have established friendships there.
The father has always resided in Pinellas County. His parents and two brothers also live there, and they enjoy a good relationship with the children. Additionally, the father has been employed for twenty years as a police officer with the city of St. Petersburg and is currently five years away from qualifying for full retirement benefits. This fact makes it financially impractical for him to relocate to another area at this time.
The mother was born in Pinellas County and spent her early childhood years there. She later lived in Raleigh while attending high school, but she no longer has any family in that immediate area. After graduating from college, she returned to the Pinellas area, where she met and married the father.
The final judgment of dissolution of marriage incorporated a marital settlement agreement in which the parties stipulated they would have shared parental responsibility of their children, with the mother as the primary residential parent. The parties agreed the father would have liberal visitation rights which were to include, at a minimum, two weekends each month, one evening during the week, two weeks during the summer, one week during the Christmas holidays, and Father's Day. They also agreed to alternate visitation on major holidays and birthdays. Although not specifically delineated in the agreement, the parties contemplated that the father would have very close physical contact with the children. However, there was no provision in either the agreement or the final judgment prohibiting the mother from relocating to another jurisdiction with the children.
One year after the parties' divorce, the mother renewed her relationship with her high school sweetheart from Raleigh. They were engaged to be married in May of 1992. Several weeks later she filed her petition to relocate to Raleigh. She alleged a desire to move based on her impending marriage, the availability of better employment opportunities, and the fact that the children would experience a higher standard of living and better educational, cultural, and recreational benefits.
Prior to the hearing on the mother's petition, the parties executed a court-approved written stipulation confirming the trial court's continuing jurisdiction over the children. They also agreed the residence of the children would continue to be in Pinellas County and neither of them would remove the children from the state of Florida without the consent of the other or the court.
The mother has delayed her marriage plans pending resolution of her petition. The evidence suggests that if the petition is not decided in her favor she will not remarry and will remain in Pinellas County.
In hopeful anticipation of being able to move to Raleigh with the children, the mother sought and received a firm employment offer there. Her annual salary would be $16,000, which represents a four thousand dollar annual increase over her present salary. The position also offers a retirement plan, which is not available at her current employment.
If allowed to move, the mother and children would live in a spacious home owned by her fiancee free of any mortgage where the children would have their own bedrooms. The home is located in a nice, secure subdivision, and the children would have access to various recreational and cultural amenities not available to them in their present setting. The children would also be enrolled in a good school system offering a variety of artistic and musical programs which they are interested in pursuing. Finally, in contrast to their present situation, they would have more reliable transportation to and from school.
The mother's fiancee enjoys an extremely stable financial position. In addition to owning his home outright, he owns two cars which are also unencumbered, earns an annual salary of $27,500, and receives ten thousand dollars a year in gifts from his parents. More importantly, he and his parents, who also live in Raleigh, have established a good relationship with the children.
*1142 In contrast to this anticipated lifestyle, the mother and children currently live in a small apartment where the children must share a room. The apartment is in need of repairs and is located in a deteriorating three-hundred-unit complex that does not offer a safe environment. The mother is also having difficulty meeting their basic living expenses. Indeed, the father acknowledged that since the divorce the children have experienced a lower standard of living.
If approved, the move would cause an approximate six-hundred-mile separation between the father and the children. To alleviate this situation, the mother proposed a visitation arrangement allowing for less frequent but longer periods of visitation than provided for in the parties' original agreement. Under her plan, the father would have the children during the summer months and certain holidays for a minimum of ninety-three days a year. The mother agreed to pay the childrens' airfare necessitated by the new schedule and one hour per week of long distance telephone calls between the father and the children. Finally, she had no objection to the father visiting the children in Raleigh and calling them without restriction.
The evidence clearly established that during the marriage the father played as equal and as significant a role in raising and caring for the children as did the mother. After the divorce, he continued to be actively involved in all phases of the childrens' lives and spent considerably more time with them than the minimum periods outlined in the agreement, which often included overnight stays several times a week. As a result of the father's commitment to the children, there is no question they enjoy a close and loving relationship. The trial court found, and the evidence clearly shows, he is an excellent father.
In denying the mother's petition, the trial court made written findings pursuant to the seminal case of Hill v. Hill, 548 So.2d 705 (Fla. 3d DCA 1989), rev. denied, 560 So.2d 233 (Fla. 1990). Hill's approach was specifically adopted by the supreme court in Mize v. Mize, 621 So.2d 417 (Fla. 1993), several months after the trial court's decision. Hill requires a trial court to weigh and consider the following six factors in deciding whether to allow a custodial parent to relocate with a minor child to another geographical area:
1. Whether the move would be likely to improve the general quality of life for both the primary residential spouse and the children.
2. Whether the motive for seeking the move is for the express purpose of defeating visitation.
3. Whether the custodial parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child or children and the noncustodial parent.
5. Whether the cost of transportation is financially affordable by one or both of the parents.
6. Whether the move is in the best interests of the child. (This sixth requirement we believe is a generalized summary of the previous five.)
Hill, 548 So.2d at 706, quoted with approval in Mize, 621 So.2d at 420.
In the application of the first two factors to the evidence, we conclude the trial court was correct in finding that the move would enhance the quality of life of the mother and children and that the mother did not have an improper motive for seeking a change of residence. However, while we recognize the broad discretion vested in the trial court to make determinations in cases such as this, Wells v. Wells, 501 So.2d 700 (Fla. 2d DCA 1987), we do not agree with the application of the remaining factors to the evidence or the ultimate conclusion that the move would not be in the best interests of the children.
In applying the third and fifth factors, the trial court correctly found the mother would make a good faith effort to comply with the substitute visitation arrangements. However, it erroneously concluded the cost and distance involved would make it very unlikely she could comply. The competent, substantial evidence is to the contrary. The mother has clearly demonstrated her willingness to maintain the close bond developed between the father and the children, and she will have *1143 the financial resources to insure the continuation of this relationship after the move by being able to provide for extended personal visits. See Lenders v. Durham, 564 So.2d 1186 (Fla. 2d DCA 1990); Wells.
The trial court also erred in concluding under the fourth factor that the mother's substitute visitation schedule was totally inadequate to foster a continuing meaningful relationship between the father and the children. The basis for this conclusion was twofold. First, the trial court found the parties intended that after the divorce the father would continue to have close physical contact with the children. Second, the trial court determined the father in fact exercised his visitation rights in accordance with what the parties contemplated, thereby establishing a strong and healthy parental bond. Thus, given these facts, the trial court was unwilling to disrupt the close geographical contact the father had with the children.
Although we agree with these factual findings, we conclude under well-established precedent that the mother's proposed visitation schedule is sufficient to sustain the close relationship developed between the father and the children under the original visitation schedule. See, e.g., Matilla v. Matilla, 474 So.2d 306 (Fla. 3d DCA 1985). The fact that the parties would reside in different states is not enough to defeat the mother's well-intentioned desire to relocate with the children where, as here, the father's visitation rights and the best interests of the children are protected by a meaningful and extended visitation arrangement. Sherman v. Sherman, 558 So.2d 149 (Fla. 3d DCA 1990).
Based on this analysis, our conclusion that the evidence satisfies the first five factors necessarily determines the best interests of the children in the mother's favor. Lenders, 564 So.2d at 1188.
The decision we reach under the Hill test of approving the long-distance separation of the children from the father will undoubtedly have sad consequences for him. As Justice Shaw so presciently observed in his separate opinion in Mize:
The majority's liberal standard favoring removal will work no inequity in those cases where the noncustodial parent has failed to exercise decisionmaking and visitation rights or has done so in a negative manner. However, where the noncustodial parent has exercised extensive parenting and visitation rights, perhaps at great personal sacrifice, and has worked hard to create a loving bond with the child, the majority opinion will invite clear injustice  as well as immeasurable heartbreak  for that parent and child, in case after case within our state.

621 So.2d at 425 (Shaw, J., concurring in result only) (emphasis added). However, we are bound by the majority opinion in Mize that clearly holds if the Hill test is satisfied the custodial parent's request for a change of residence should ordinarily be approved. 621 So.2d at 419.
We therefore reverse the trial court's order denying the mother's request to move. We remand this case for the entry of an order allowing her to relocate to Raleigh, North Carolina, with the children and approving her proposed visitation schedule. The order shall also require the mother to pay the transportation costs and long distance telephone expenses she agreed to assume.
Reversed and remanded with directions.
PARKER, A.C.J., and ALTENBERND, J., concur.