# Third District Court of Appeal

## State of Florida

Opinion filed December 21, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D14-1169
Lower Tribunal No. 09-16437
_____

**Kristy Naime,**
Appellant,

vs.

**Jacinto T. Corzo, III,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Antonio Marin, Judge.

Abramowitz & Associates and Jordan B. Abramowitz, for appellant.

Phillips Lanier, PLLC and Emily Joyce Phillips, for appellee.

Before SHEPHERD, EMAS and FERNANDEZ, JJ.

EMAS, J.

Kristy Naime appeals a final order denying her verified petition to relocate to Port St. Lucie with her minor child. We affirm the court's order insofar as it denies the petition, but reverse and remand for the trial court to enter an amended order deleting the language imposing an impermissible geographical restriction on any future relocation by Mother.

Kristy Naime ("Mother") and Jacinto Corzo III ("Father") were married in 2002. Their minor child was born in 2006. In 2009 the Mother and Father separated, a petition for dissolution was filed, and the parties entered into a mediated settlement agreement in November 2010. This agreement was ratified by a final judgment of dissolution of marriage, rendered in January 2011. The mediated settlement agreement and final judgment did not, by its terms, address relocation of the minor child.

In June 2013 Mother filed a verified petition seeking to relocate with the minor child from Miami-Dade County to Port St. Lucie, Florida. Father answered and objected to the proposed relocation. The trial court held a final hearing during which the parties testified and presented the testimony of six other witnesses. Thereafter, the trial court entered an order denying Mother's petition. On appeal, Mother raises three issues; the first two contend that the trial court abused its discretion in denying the petition based on the evidence presented. Having reviewed the trial court's order, and the record evidence upon which it was based,

we find that the trial court properly considered and applied the requisite and applicable factors set forth in section 61.13001(7), Florida Statutes (2014), and articulated findings of fact that are supported by competent substantial evidence. We find no abuse of discretion in the trial court's order denying the petition for relocation, and to hold otherwise would require us to substitute our judgment and findings for those of the trial court. See Young v. Hector, 740 So. 2d 1153, 1159 (Fla. 3d DCA 1998) (quoting Reinhart v. Reinhart, 291 So. 2d 103, 105 (Fla. 1st DCA 1974), which observed: "It may well be that were we permitted to hear the case de novo we might enter a different final judgment. However, such is not our prerogative.")

However, we agree with Mother that the trial court erred in including the following language in its order: "The minor child shall not be permitted to relocate outside of Miami-Dade County, Florida." Such prospective relief was not pled or sought by Father, nor was it tried by consent. It should not have been included in the order denying relocation.[1] See Scariti v. Sabillon, 16 So. 3d 144 (Fla. 4th DCA 2009). Further, such a geographical restriction is contrary to the provisions of the relocation statute. See §61.13001(1)(e), Fla. Stat. (2011) (defining the term "relocation" as a change of location that is at least 50 miles from the location of the

[1] Father did not address this issue in his answer brief, and properly conceded in oral argument that this provision should not have been included in the order denying relocation.

3

principle residence of a parent at the time of the last order establishing or modifying time-sharing).

We reverse and remand in part for the trial court to enter an amended order deleting the prospective restriction which provides that the minor child shall not be permitted to relocate outside of Miami-Dade County, Florida. The order is in all other respects affirmed.

Affirmed in part, reversed in part and remanded with directions.

FERNANDEZ, J., concurs.

SHEPHERD, J., dissenting.

After a careful review of the trial transcript and supporting evidence introduced at the trial of this case, I conclude the trial court abused its discretion in denying the Former Wife's Petition to Relocate from Miami-Dade County to Port St. Lucie, Florida. Accordingly, I respectfully dissent from the contrary conclusion reached by the majority.[2] A brief summary of the facts of the case is necessary to explain my decision.

## Procedural and Factual Background

Naime and her former husband, Jacinto T. Corzo, III, were married on June 22, 2002 in Miami-Dade County Florida. The marriage produced one child, a son born on August 9, 2006. The final judgment dissolving their marriage, rendered on January 6, 2011, incorporated a mediated settlement agreement which provided for shared parental responsibility and the following time-sharing schedule: The child would be in the mother's care during the week with the parties alternating weekends (from Fridays after school until Monday morning before school). Midweek, the father would have care of the child after school on Tuesday until

---

[2] I agree with that portion of the opinion directing the trial court to delete the language of the order relating to prospective relief.

Thursday morning on the mother's weekends, and from Wednesday after school until Thursday morning on his weekends. The agreement also provided for equal time-sharing during holidays and school vacations. It was silent on the issue of relocation. Since the date of dissolution, both parties have remarried.

On June 4, 2013, Naime filed a verified petition for relocation, seeking permission to relocate with the child to Port St. Lucie, near where her new husband had just landed a job as a firefighter four months earlier, and contracted for a new home. Naime alleged the move would improve the family's quality of life and would be in the child's best interests. Corzo objected to the petition. His principle objection was that the distance between the mother's present home and proposed future home, 135 miles, would significantly interfere with his time-sharing. The petition was tried December 18, 2013, and February 6, 2014, at which time the trial court heard testimony from Naime and her new husband, and from Corzo, his new wife, his mother, and his two sisters. On May 2, 2015, the trial court entered a final judgment denying the petition. While it dutifully treated each of the factors in the relocation statute, section 61.13001(7) of the Florida Statutes (2013), a close analysis reveals that the order of the trial court is not supported by competent, substantial evidence. In fact, the final judgment completely ignores the evidence offered by the mother.[3]

_____

[3] The trial judge received draft judgments from the parties. The 19-page judgment appears to have been drafted by Corzo's counsel and signed, after the addition by

## Analysis

The focus of any contested relocation case is on the best interests of the child. The parent wishing to relocate has the initial burden to prove by a preponderance of the evidence that relocation is in the best interests of the child. § 61.13001(8). If the initial burden is met, the burden shifts to the non-relocating parent to show by a preponderance of the evidence that relocation is not in the best interests of the child. Id. Further, under current law, "[a] presumption in favor or against a request to relocate with the child does not arise if a parent or other person seeks to relocate" even if "the move will materially affect the current schedule of contact, access, and time sharing with the non-relocating parent or other person." § 61.13001(7).

An appellate court reviews a trial court order regarding relocation on an abuse of discretion standard. Muller v. Muller, 964 So. 2d 732, 733 (Fla. 3d DCA 2007). In reviewing the order, we are charged with the obligation to determine whether there is substantial, competent evidence to support the trial court's findings under section 61.13001(7). A relocation decision made upon findings that are not supported by competent, substantial evidence constitutes an abuse of

_____

the trial judge of conclusory statements at the end of randomly selected paragraphs conveniently following selectively drafted factual recitations by Corzo's counsel. See Perlow v. Berg-Perlow, 875 So. 2d 383 (Fla. 2004) (cautioning against verbatim adoption of party's proposed judgment which creates the appearance the trial court did not independently make factual findings and legal conclusions).

discretion. Fredman v. Fredman, 960 So. 2d 52, 60 (Fla. 2d DCA 2007); Botterbusch v. Botterbusch, 851 So.2d 903, 904 (Fla. 4th DCA 2003); Dorta-Duque v. Dorta-Duque, 791 So. 2d 1148, 1149 (Fla. 3d DCA 2001). Of course, we do not engage in reweighing the evidence or make value judgments which are best left to the trial judge. Muller, 964 So. 2d at 733.

In 2006, recognizing that the issue of relocation and its effect on the custodial arrangements of divorced parents was one of increasing concern in our mobile society, the Florida Legislature revised and extended the then existing factors it had decreed in former section 61.13(2)(d) that "the court must consider" in reaching a relocation decision,[4] and placed them in a new section, 61.13001 of the Florida Statutes, titled "Parental relocation with a child." Ch. 2006-245, Laws

---

[4]The factors, as they existed just prior to the 2006 amendments to the law read as follows:

1. Whether the move would be likely to improve the general quality of life for both the residential parent and the child.
2. The extent to which visitation rights have been allowed and exercised.
3. Whether the primary residential parent, once out of the jurisdiction, will be likely to comply with any substitute visitation arrangements.
4. Whether the substitute visitation will be adequate to foster a continuing meaningful relationship between the child and the secondary residential parent.
5. Whether the cost of transportation is financially affordable by one or both parties.
6. Whether the move is in the best interests of the child.

§ 61.13(2)(d), Fla. Stat. (2005).

of Fla.  Closely paralleling the prior law, except for expressly adding financial betterment to the list of considerations, the new relocation statute, as amended since its adoption in 2006, articulates the factors that now "the court shall evaluate" in determining whether a move will be in the best interest of the child to be the following:

 (a) The nature, quality, extent of involvement, and duration of the child's relationship with the parent or other person proposing to relocate with the child and with the nonrelocating parent, other persons, siblings, half-siblings, and other significant persons in the child's life.

(b) The age and developmental stage of the child, the needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.

(c) The feasibility of preserving the relationship between the nonrelocating parent or other person and the child through substitute arrangements that take into consideration the logistics of contact, access, and time-sharing, as well as the financial circumstances of the parties; whether those factors are sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent or other person; and the likelihood of compliance with the substitute arrangements by the relocating parent or other person once he or she is out of the jurisdiction of the court.

(d) The child's preference, taking into consideration the age and maturity of the child.

(e) Whether the relocation will enhance the general quality of life for both the parent or other person seeking the relocation and the child, including, but not limited to, financial or emotional benefits or educational opportunities.

9

(f) The reasons each parent or other person is seeking or opposing the relocation.

(g) The current employment and economic circumstances of each parent or other person and whether the proposed relocation is necessary to improve the economic circumstances of the parent or other person seeking relocation of the child.

(h) That the relocation is sought in good faith and the extent to which the objecting parent has fulfilled his or her financial obligations to the parent or other person seeking relocation, including child support, spousal support, and marital property and marital debt obligations.

(i) The career and other opportunities available to the objecting parent or other person if the relocation occurs.

(j) A history of substance abuse or domestic violence as defined in s. 741.28 or which meets the criteria of s. 39.806(1)(d) by either parent, including a consideration of the severity of such conduct and the failure or success of any attempts at rehabilitation.

(k) Any other factor affecting the best interest of the child or as set forth in s. 61.13.

§ 61.13001(7).   Although the relocation statute has long required that the court "consider" or "evaluate" each factor in reaching its decision, a relocation decision is not reducible to a mathematical calculation of points.  Rather, the factors are guidelines to assure the court considers how the proposed move will affect the child's overall quality of life, existing relationships, and physical, educational and emotional development.  In the end, the question in a relocation case ultimately resolves to a balancing of the child's quality of life against any damage to the relationship with the non-relocating parent.  In the case before us, the trial court

10

reversibly erred through a misapplication of the guidelines to reach an incorrect decision on the central issue presented. Let me explain through a discussion of the factors:[5]

**(a) The nature, quality, extent of involvement, and duration of the child's relationship with the parent or other person proposing to relocate with the child and with the nonrelocating parent, other persons, siblings, half-siblings, and other significant persons in the child's life.**

In analyzing the first factor, the judgment is replete with references to the child's "particularly close bond" with the father and his relationship with the father's extended family. For example, the judgment states the father "consistently, if not always, exercised his timesharing with the minor child," "has been consistently involved in the minor child's life since birth," "has always lived near the minor child," and "the only reason he bought the house where he currently lives with his new wife, was so that he could be closer to his son and his son's school, [despite the fact that it] is a commute of more than one . . . hour to his employment." The trial court also "found" as a fact that the "father is extremely responsible and has always maintained current with his child support payments." The father's witnesses – his mother, new wife and two sisters – echoed the father's

---

[5] Factors (d), (i) and (j) will not be discussed. At the time of the hearing, the child was too young to be able to express a preference of residential desirability (Factor (d)), "career and other opportunities for the objecting parent or other person" (Factor (i)) were irrelevant to the analysis, and there was no "history of substance abuse or domestic violence" in the family (Factor (j)).

11

testimony, opining, unsurprisingly from their viewpoint, that the move would be "detrimental to the child."

However, the judgment, as crafted, pays absolutely no heed to the testimony of the mother and her new husband on this factor, including the mother's testimony that the father abandoned the family for another woman in early 2009, and that she did not know where he was for at least six months. During this time, the mother cared for the child on a $35,000 annual salary without support from the father, a point admitted by him in his testimony, but disregarded by the trial judge. In fact, Corzo did not start paying child support until he consulted with a lawyer to begin dissolution proceedings, months after he abandoned his family. There is obviously a significant difference between being an "extremely responsible" father who "has always maintained current with his child support payments," as the final judgment would have it, and being made responsible by pre-litigation advice of counsel.

The truth of the matter is that the child has struggled since the parties separated in 2009. The mother first rented an apartment in Cutler Bay upon finding that Corzo had cheated on her. Six months later, she was able to move back into the marital home for a period, and then moved in with her grandparents and uncle in a one-bedroom apartment in order to make ends meet. Thereafter, she moved into a two-bedroom apartment in the Design District and then, of necessity, back into her grandparents one-bedroom home. At the time of trial, she and her

12

son were living in that one-bedroom home along with three other persons. For her trouble, the final judgment faults the mother for creating "instability" in the life of the child and rates it as a factor "weigh[ing] against granting the petition," while never mentioning anywhere in the final judgment that her former husband was, at the same time, earning $124,000 or more per year as a store manager at a Walgreen's in Miami Beach, and diverting his income throughout this period to the purchase of a four-bedroom home in Cutler Bay for his new wife and a new baby.

The trial court could not even afford Naime the courtesy of discounting her and her new husband's testimony on the ground that it was not credible or on the basis of some other canard. Instead, the judgment signed by the trial judge paints a portrait of an idyllic family life between the child, the father and his family, while mother and son are ensconced in a hovel to enable the father's pleasure. This state of affairs, only the happy half of which is recounted in the judgment of the court, "weighs" in the estimation of the trial court "against relocation." The conclusion defies credulity.

**(b) The age and developmental stage of the child, the needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.**

On this factor, the trial court found that Corzo presented substantial, competent evidence that relocation would negatively impact the child's educational and emotional development, that changing schools would be disruptive to his

13

educational advancement because of his relationship to his teacher and classmates, and that the relocation would prevent Corzo from participating in the child's school. This is not supportable. At the time of the relocation hearing, the child attended Assurant Satellite Learning School, which is associated with Naime's employer in Miami. Her department recently had been downsized from twenty-five to five employees, and her job was itself at risk. Upon Naime's severance from employment, the child would no longer be able to attend his current school. The child's change to a new school was almost inevitable at the time, either in Miami or Port St. Lucie.

More significantly, although Corzo claims he bought his present home only five miles from the child's school to facilitate the father's involvement in his son's school activities, the testimony at trial established that he had little involvement in his son's education. Corzo admitted he does not take his son to school when the child is in his care, and further that his new wife cannot do so because of the baby. Because he needs to be at work by 7:30 a.m., Corzo wakes the child up before 6:00 a.m. on school days and drives him forty-five minutes to the north to Allapattah, where the paternal grandmother lives, so the grandmother can then drive the child forty-five minutes to an hour back south, instead, incidentally, of paying for early morning child care that is available at the school. This means the child has about an hour and a half to a two-hour commute to school on the weekdays he is in his

14

father's care.  In addition, the evidence shows Corzo visited the child's school and spoke to the child's teacher on only one occasion.  On the other hand, the trial court ignored (in fact, inaccurately contradicts) Naime's testimony regarding the highly rated elementary school three miles from the Port St. Lucie home her son would attend upon relocation, and the flexibility her new husband's income and lower living costs in the area would afford for her to work part-time in Port St. Lucie and be home for her son in the afternoon in the stead of placing him in after school care as is presently the case.

**(c) The feasibility of preserving the relationship between the nonrelocating parent or other person and the child through substitute arrangements that take into consideration the logistics of contact, access, and time-sharing, as well as the financial circumstances of the parties; whether those factors are sufficient to foster a continuing meaningful relationship between the child and the nonrelocating parent or other person; and the likelihood of compliance with the substitute arrangements by the relocating parent or other person once he or she is out of the jurisdiction of the court.**

Naime's proposed substitute arrangement in the relocation was to maintain the father's every other weekend time-sharing, but give the father the majority of the summer – all but two weeks – with his son.  Holiday time-sharing would not be disturbed.  The trial court found this proposal "unsatisfactory" because the Father feels his bond with the child will suffer since he will go almost twelve days at a time without seeing his son for alternating weekends, whereas with the current schedule, the Father never goes more than four days at a time without seeing the minor child.  The trial judge found it would not be "possible for the Father to

15

maintain the **same relationship** with the minor if the minor child relocates, especially during the school week." (Emphasis added.) However, the issue on substitute arrangements is not whether the new arrangement offers the same degree of frequent and continuing contact, but rather whether the proposed new visitation is "**adequate**." See Stockburger v. Stockburger, 633 So.2d 1140, 1143 (Fla. 2d DCA 1994) (emphasis added) (concluding that extended visits may serve the parental relationship better than the typical weekly visit or at least be sufficient to sustain a close parental relationship); see also Wilson v. Wilson, 827 So. 2d 401 (Fla. 2d DCA 2002) (reversing the order denying relocation because the trial court used an incorrect legal standard). In this case, Naime offered Corzo the majority of the child's summer, which would have improved and increased the child's quality time with Corzo and his family members. The paternal aunts stated they primarily enjoy time with the minor child during the summer months, and Corzo stated he is able to take ample vacation time during the summer months. More significantly, under Naime's proposed post-relocation time-sharing schedule, Corzo's weekend overnight time-sharing would remain intact. As Naime made the offer for the extended summer visitation, there is no question of her compliance with this schedule. Thus, the combination of continued alternative weekend visitation and extended summer visitation provides sufficient contact to maintain a continued close relationship between father and son.

**(e) Whether the relocation will enhance the general quality of life for both the parent or other person seeking the relocation and the child, including, but not limited to, financial or emotional benefits or educational opportunities.**

Because the trial court's findings as to this factor are the most troubling, I set them forth in their entirety:

A. The Mother testified that she does not have a new job in Port St. Lucie and is willing to quit her current job with the Assurant Group, which she has held for many years. Accordingly, the relocation will not provide any financial benefit to the minor child because the Mother will lose her current income.

B. The minor child's educational opportunities will change because he will be forced to start a new school, and he will not be attending school on the Mother's campus of employment as he has done since starting school. The Mother did not produce any evidence during the trial that he would be attending a better school system in Port St. Lucie than the one he is currently attending in Miami.

C. The Mother did not meet her burden of proving by a preponderance of the evidence that the relocation will enhance the general quality of the minor child's life. The Mother testified that because she is moving into a large home with her new husband, the minor child will have his own room, which is a better living arrangement than where they are currently living with her grandparents. The Mother seems fixated on the quality of the new home, and the dependency on her new husband's employment. However, the Mother and her new husband failed to provide any evidence at trial that they looked for their own home, in Miami, that would give the minor child his own bedroom. In fact, the Father testified that he pays less for his four bedroom home in Miami than the Mother will be paying for her home in Port St. Lucie. The sole reason for the relocation is that the Mother's new husband no longer wishes to commute back and forth between Miami and Port St. Lucie where he is employed.

D. The Mother failed to produce any substantial or credible evidence that she would receive better medical treatment for her diabetes in

17

Port St. Lucie as opposed to in Miami. The Mother failed to testify as to the names of any physicians in Miami who had waiting lists for months at a time to treat her for diabetes. The Mother's testimony was lacking in credibility as to this issue because there are numerous physicians in Miami, all with different waiting time(s) to see new patients.

E. The Mother's diabetes is also a concern for the relocation to Port St. Lucie because she will no longer have her own family as a support system. The Mother also grew up in Miami, like the Father, and all of her family, including her own grandparents, live in Miami and are able to assist her if she becomes ill. In fact, the Father's mother . . . , who the Court finds a credible witness, testified that she was very concerned about the Mother living in Port St. Lucie, so far away from her support system, because the Mother had fallen ill in the past and needed help from her as well as her own family members. This factor delineates a pattern not justifying mother's petition.

As to the mother's job, Naime testified she will be leaving her employment upon moving to Port St. Lucie, but further stated her new husband, who recently had obtained the firefighter's job in a nearby town, is financially able to support her and the child on his new salary. At a minimum, the couple's income will remain the same as it was when both worked in Miami-Dade County, the new husband then holding a lesser job. Concerning the child's school, Naime's separation from her employer will result in a change of the child's school, and, contrary to the trial court order, the child would attend an "A" school in a family-oriented neighborhood in Port St. Lucie where her new home is located.[6] In short, the child would be going from a one-bedroom apartment with four other adults to a

---

[6] In comparison, father's counsel conceded during trial that "[Miami's] not the friendliest place in the universe."

18

four-bedroom house, where he has his own bedroom, a playroom, and an ample backyard in which to play.

Finally, the final judgment, as primarily drafted by counsel and signed by the trial judge, raised the mother's diabetic condition as reason against allowing relocation, mainly based on a perceived "lack of family support." However, pursuant to the record before us, the mother does not have a history of a detrimental illness or the like. The trial court relied on the testimony of the paternal grandmother to portray Naime's diabetes as a major concern. However, the grandmother's actual testimony was that on one occasion in the past Naime fell ill and was taken to the hospital, and the grandmother "believed" it was because of a diabetic problem. On rebuttal, Naime refuted the paternal grandmother's testimony, testifying that since 2009 she became ill just twice, and neither time was her illness related to diabetes. Nor, on either of those occasions, was it necessary for the paternal grandmother or any other member of Corzo's family to provide any assistance to Naime. However, even if Naime suffers a diabetes-related illness, common sense tells us she would be much safer living with her firefighter husband, who is also and EMT, than with her elderly grandparents.

**(f) The reasons each parent or other person is seeking or opposing the relocation.**

This is the most telling point of all. Although completely ignored by the trial judge and not even acknowledged to have occurred in the final judgment

19

executed by the trial court, the record clearly shows a father who places his own interests ahead of his child. The testimony is so revealing and disturbing that I again will ask the reader's indulgence to permit a verbatim recitation of an illustrative portion:

> Q.   Have you ever texted with him?
>
> A.   Yes.
>
> Q.   I'm going to show you a series of text messages between you and him.
>
> . . .
>
> THE WITNESS:   Okay.  Yeah, I remember these texts.
>
> BY MS. SACHS:
>
> Q.   So what were the texts about?
>
> A.   This one was about, I just picked up Tyler from school.  He had come from his dad's house the day prior.  And we were in the car and we were talking about the house because Tyler was really excited about the house.  He has his own room and everything. And out of the blue, he said, Daddy said that I'm never going to see him again, and I questioned him.  I said, what do you mean you're never going to see Daddy again?  He goes, he said, Once we move, he says that we're never going to see him or his family again.
>
> . . .
>
> Q.   Okay.  And what is the first text message you wrote?
>
> A.   I said, Did you tell Tyler he wasn't going to see you or your family anymore since he is moving?
>
> Q.   And what was his response?

20

A.   He says, Question mark, question mark, question mark.  Tyler is not moving.

Q.   And what did you say?

A.   I said, Why would you tell him that?

Q.   And then he said?

A.   He said, Tell him what?  And then I said, That he won't see you or your family if he moved?

Q   And then what did he say?

A.   He said, What are you talking about?  Tyler is not moving.

Q.   And then on the small ones?

A.   I go, So why did you tell him that?  He said, I didn't.  If you have anything to say, contact my lawyer.  And then I said, You obviously did because Tyler told me that you said since I'm moving away with him, he is not going to see you or your family anymore.  And then he said, I have nothing to discuss.  And then I said – he says, I have nothing to discuss with --

Ignoring this testimony, the final judgment opines that "The only reason for the mother's relocating is that she has remarried," "the new husband is sick and tired of doing the commute back and forth between Port St. Lucie and Miami," and that "the mother and her new husband made no credible efforts to find substitute housing in Miami."  The latter two reasons are legally irrelevant. Whether the mother's new husband likes or dislikes his commute is of no moment.  Similarly, it is not a pre-condition to prevailing on a petition for relocation for the petitioner to prove that she and her new husband made a bona fide effort to find substitute

21

housing in Miami. Imposition of these two requirements on the petitioner constituted judicial overreach. It is also an overstatement to say that the "**only** reason the mother's relocating is that she has remarried." (Emphasis added.)

It cannot be gainsaid that the mother's desire to be with her new husband is an animating reason for the filing of the petition. It may even be the primary reason. Another may be that her new husband purchased a home thirty minutes from his job at a price ($186,000) not likely to be matched in Miami-Dade County before she filed her petition in this case. However, the mother's motivation for desiring to relocate and any forces impelling her to do so are not our concern. She has a constitutional right to live wherever she pleases. The issue before us is whether it is in the best interests of the child to permit him to follow. On this issue, there are many reasons to support the son's move to Port St. Lucie. Among them are the fact that the relocation would remove the child from a one-bedroom apartment occupied by five persons to a home where the child would have his own room and a backyard in which to play in a family-oriented neighborhood. He also would be enrolled in an "A" graded school. In addition, because the new husband's increased salary, due to his obtaining a hard-to-get firefighter's job, is the near equivalent of the combined income he and the mother earned in Miami-Dade County when he worked at a lesser job, the mother would not have to work full time and could be home for her son after school instead of placing him in after-

22

school care, the present circumstance in Miami-Dade County. It seems unimpeachable that the child's quality of life will be significantly better in Port St. Lucie.

**(g) The current employment and economic circumstances of each parent or other person and whether the proposed relocation is necessary to improve the economic circumstances of the parent or other person seeking relocation.**

The father is a manager of a Walgreen's store located in Miami Beach. With bonuses, he routinely earns a six-figure income. His most recent annual income was $124,000. The mother's new husband obtained his firefighter job just four months before the mother filed her petition. He received a substantial salary increase to $60,000 in his new employment, and was able to contract for a new house for his new family in Port St. Lucie at a price not imaginable in Miami-Dade County. The mother professes that she will obtain part-time employment in Port St. Lucie after the move. Her living expenses will be lower there. The relocation is necessary to improve her economic circumstances.

**(h) That the relocation is sought in good faith and the extent to which the objecting parent has fulfilled his or her financial obligations to the parent or other person seeking relocation, including child support, spousal support, and marital property and marital debt obligations.**

As set forth above, the father failed to meet his child support obligations for several months after the parties separated and did not even let the mother know of his whereabouts during the first six months after the separation. In contrast, the mother did her best to support herself and the minor child with substantially

23

diminished resources. Unlike the father's reason for opposition, ignored by the drafters of the final judgment, the mother's reasons for seeking relocation of the minor child are pure. She has remarried an individual who has a stable job and strong annual income a few counties north of Miami-Dade County. The son's quality will be better in all respects if he moves with the mother outside of Miami-Dade County. The story of this mother and the journey she has travelled in the last five years since her divorce is the story of many women (and men) in the mobile society in which we live. She, no less than her remarried former husband, should be able to continue on that journey, and not forfeit custody of her son to do so – a condition precedent it is quite apparent from a close reading of the record the former husband would be delighted to exact.

## Conclusion

When all is said and done in this case, the best the father has to offer his child is more frequent visitation with his son than will likely be the case if the child moves away to Port St. Lucie with his mother. That is not a thing to be sneezed at. However, if modification or a decrease in the quantity of time-sharing was the sole or ultimate factor in making a relocation determination, relocations would be rare. In fact, our relocation statute specifically prohibits a judge from considering the change in the non-relocating parent's time-sharing schedule or the decrease in the non-relocating parent's quantity of time-sharing as the ultimate factor in denying a

24

relocation request. § 61.13001(7) ("A presumption in favor of or against a request to relocate with the child does not arise if a parent or other persons seeks to relocate and the move will materially affect the current schedule of contact, access, and time-sharing with the nonrelocating parent or other person."). Balancing the salutary effects relocation will have on the child's quality of life in this case, ranging from removal from a one-bedroom apartment with four others to a home in a family oriented neighborhood, matriculation in an "A" graded school, and a mother able to greet him at home after school, against the potential damage to the non-relocating parent and his family from the relatively modest adjustment in time-sharing and visitation schedule necessary to achieve those benefits, this case cries out for a grant of the petition. The trial court's denial of the mother's petition in this case was arbitrary, capricious and contrary to law.

I would reverse the order on appeal.